**STATE of Tennessee, Appellee,**

v.

**Todd J. BUCKMEIR and Michael Todd Stacey, Appellants.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Jan. 5, 1995.

Permission to Appeal Denied by Supreme Court May 8, 1995.

---

Edward C. Miller, Public Defender, Dandridge, David W. Webb, Sevierville, for appellants.

Charles W. Burson, Atty. Gen. & Reporter, Merrilyn Feirman, Asst. Atty. Gen., Nashville, Al C. Schmutzer, Jr., Dist. Atty. Gen., G. Scott Green, Asst. Dist. Atty. Gen., Sevierville, for appellee.

### OPINION

PEAY, Judge.

The defendants were charged in the indictments with rape by force or coercion. At trial, a jury found them both guilty of assault. The trial judge sentenced defendant Buckmeir to eleven (11) months and twenty-nine (29) days in the county jail. He was also ordered to pay a fine of two thousand five hundred dollars ($2500) and directed to serve seventy-five percent (75%) of his sentence. The trial judge ordered defendant Stacey to eleven (11) months and twenty-nine (29) days in the county jail with all but thirty (30) days suspended. He was also ordered to pay a fine of five hundred dollars ($500).

In this appeal as of right, the defendants present three (3) issues for review. They first contend that the assault convictions are void under the facts of this case because assault is not a lesser included offense of rape. In their second issue the defendants assert that the evidence was insufficient to sustain their convictions for assault. Lastly, they allege that the trial court imposed excessive sentences and misapplied the enhancement and mitigating factors. After a review of the record in this case, we affirm the convictions for assault, but reduce the sentence of each defendant.

The evidence presented at trial shows that one evening in October 1991, the victim was

at the home of the defendants, by invitation, for a small gathering. During the course of the evening the defendants and the victim drank alcohol and played drinking games. The victim testified that she had consumed three or four wine coolers while there. Those gathered at the defendants' home also played a round of "Truth or Dare" in which the victim was dared to raise her blouse, which she did, and Buckmeir was dared to go outside to place his penis in the mouth of a carved pumpkin, which he did. At some point after these events, the victim testified that as she had put a wine cooler to her lips, she felt something hit her lip. She testified that she had asked Buckmeir about this and he said that there was nothing in the bottle. Both he and she testified that he had then passed the bottle around for all to drink from to prove to the victim that nothing was in it. Shortly thereafter, the victim testified, she had gotten sleepy and went to the living room to lie down in a chair.

When the victim awoke, she found herself in one of the bedrooms with Buckmeir having intercourse with her. She testified that she had tried to stop him but that she could not. Shortly after Buckmeir left the room, Stacey entered the room. Stacey testified that he had gotten ready for bed when Buckmeir came downstairs and told him that the victim was in his room "wanting him." Stacey further testified that he had thought this meant that the victim wanted to have sex with him because they had been flirting and kissing throughout the evening. Stacey stated that when he had opened the door to Buckmeir's room, the victim was lying on the bed without any clothes on except her bra. He further stated that he had then proceeded to have sex with the victim. The victim testified that she was crying and visibly upset when Stacey entered the room. She also stated that after several requests Stacey had stopped having sex with her.

Other residents of the house testified that they had heard a woman's sobs and screams coming from Buckmeir's bedroom, but they all testified that they had thought that the

victim and Buckmeir were simply arguing. Several of the residents of the house testified that they had heard the victim screaming for her keys and that she had left the house in a distressed state.

The victim testified that after she had left the defendants' home, she went to a nearby gas station where a friend was working. From there, the police were contacted and the victim was taken to the hospital for a rape kit. At trial evidence was produced that the seminal fluid found in the victim's body matched that of both defendants and that in the absence of a DNA test, it was impossible to determine the depositor(s). Evidence was also produced at trial that Stacey willingly consented to a search of the house and willingly submitted to a rape kit. Buckmeir refused the rape kit.

Stacey testified that he thought, based on what Buckmeir told him and the victim's actions towards him that evening, she wanted to engage in sexual intercourse with him. He also testified that when the victim had asked him to stop that he stopped immediately. Buckmeir did not testify.

The defendants first argue that the assault convictions are void because assault is not a lesser included offense of rape. Specifically, Stacey argues that because he thought he was having consensual intercourse with the victim and because the jury acquitted him of rape, the assault conviction is void because the jury could not have found there was any other offensive touching aside from the sexual intercourse. This argument, however, is flawed.

T.C.A. § 39–13–503 defines rape as: Unlawful sexual penetration of a victim by the defendant or of the defendant by a victim accompanied by any of the following circumstances:

> (1) force or coercion is used to accomplish the act;

T.C.A. § 39–13–101 states that an assault is committed when a person:

> (1) Intentionally, knowingly or recklessly causes bodily injury to another;[1]

---

**1.** The trial judge did not instruct the jury on this element of assault. Only the last two elements

were charged.

(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or

(3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

With regard to Stacey, the jury could have found that the touching of the victim, i.e. the sexual intercourse, was offensive but did not rise to the level of rape by force or coercion as defined by the statute. Stacey might also not have been aware of how drunk the victim was; therefore, he would not have known she was incapable of effectively communicating to him that she did not want to engage in sex. However, sexual penetration is a touching and a reasonable person could have considered this conduct offensive.

Buckmeir specifically alleges that because he denied ever having any contact with the victim, sexual or otherwise, that the jury verdict for him had to be an all or nothing proposition. This argument is clearly without merit as well. Buckmeir did not testify in his own behalf, and the jury obviously credited the testimony of the victim in this instance. Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence. *State v. Grace,* 493 S.W.2d 474, 476 (Tenn.1973).

Applying the same reasoning as was used with respect to Stacey, the jury obviously found that the defendant had touched the victim, that it was offensive, but that it did not rise to the level of rape as defined by the statute.

The defendants further argue that the trial court improperly instructed the jury that assault is a lesser included offense of rape and erred in so instructing the jury without the defendants' having placed assault at issue. These arguments are likewise without merit. The trial judge is required to make affirmative instructions on every issue raised by the proof. *Taylor v. State,* 212 Tenn. 187, 369 S.W.2d 385, 386 (1963); *see also* T.C.A. § 40–18–110(a).

Likewise, the fact that the defendants did not place assault at issue before the jury does not make it error for the trial court to instruct the jury on a lesser included offense. Our Supreme Court has upheld lesser included offense charges where the state, and not the defendant, has requested them. *See Laury v. State,* 187 Tenn. 391, 215 S.W.2d 797 (1948). The trial judge in this case obviously believed, and we agree, the facts of the case were such that a reasonable jury could conclude the defendants were guilty of assault. Therefore, the defendants' claim that the trial judge erroneously charged the jury on the elements of assault is without merit.

In their second argument the defendants challenge the sufficiency of the convicting evidence. A defendant challenging the sufficiency of the proof has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her case. This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn.1982).

When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate infer-

ences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978).

 As stated previously, this Court does not review the weight of the evidence nor determine the credibility of the witnesses. The evidence presented at trial was that the victim had been drinking at the defendants' home, that she fell asleep and awoke to find Buckmeir having sex with her. The victim testified that she repeatedly asked the defendant to stop. The evidence also shows that Stacey had sex with the victim, but that he thought it was consensual. From both his and the victim's testimony, the evidence indicates that Stacey did at some point stop after the victim so requested. Other residents in the house heard the victim crying and screaming. The seminal fluid taken from the victim's body revealed that either or both defendants could have been the depositor(s). Based on that evidence, a rational jury could have found beyond a reasonable doubt that both defendants touched the victim and that this touching was offensive to a reasonable person. Therefore, the elements of assault were met and this issue is without merit.

 In their third and final issue the defendants allege that the trial court improperly sentenced them to eleven (11) months and twenty-nine (29) days. After a *de novo* review of the record, we agree that the defendants were improperly sentenced.

When the trial judge charged the jury on the elements of assault, he did not inform them as to the different grades of misdemeanor assault nor that they had to determine the grade. Thus, when the jury returned a verdict of guilty as to assault, the verdict did not specify the grade of the misdemeanor offense. T.C.A. § 39–13–101(b) states that an "[a]ssault is a Class A misdemeanor unless the offense is committed under subdivision (a)(3) in which event assault is a Class B misdemeanor." As stated previously, the jury likely found that the defendants were guilty of assault by intentionally or knowingly touching the victim and a reasonable person would regard this contact as offensive or provocative. T.C.A. § 39–13–101(a)(3). The elements of the other forms of assault simply were not present. The victim testified that she did not fear immi-

nent bodily injury by the defendants as required by T.C.A. § 39–13–101(a)(2), and the other element of assault was not charged, as noted previously. Therefore, under the statute, the defendants would have to be guilty of offensive touching under T.C.A. § 39–13–101(a)(3) and subject only to convictions for Class B misdemeanors. Furthermore, the State conceded at the oral presentation of this case that the defendants should have received convictions for Class B misdemeanor assault.

The trial court sentenced each defendant to eleven (11) months and twenty-nine (29) days, the statutory maximum for a Class A misdemeanor. That is the only evidence in the record to indicate of which grade of misdemeanor assault the defendants were convicted. The instructions from the judge to the jury failed to indicate that they had to determine the grade of misdemeanor assault, and no distinction was made by the jury in their verdict. In the absence of such evidence, this Court is compelled to reduce each defendant's conviction to a Class B misdemeanor assault, for which the maximum sentence is six (6) months.

The defendants also contest the weight the trial court gave to the enhancement and mitigating factors. With respect to Buckmeir, the trial court applied three enhancement factors: that the defendant was the leader in the commission of an offense involving two or more actors, pursuant to T.C.A. § 40–35–114(2); that the victim was particularly vulnerable because of age or physical or mental disability, pursuant to T.C.A. § 40–35–114(4); and that the offense was committed to gratify the defendant's desires, pursuant to T.C.A. § 40–35–114(7). The defendant only challenges the use of the first two.

 There is no evidence in the record to show that Buckmeir was the leader in the commission of the offense. The fact that both of them engaged in sex with the victim does not suggest that Buckmeir was the leader in that act. Thus, this first enhancement factor was improperly applied to the defendant. The other enhancement factor challenged by the defendant, that the victim was particularly vulnerable, was properly applied

in that the defendant knew the victim had been drinking and was "passed out" when he decided to have sex with her.

Buckmeir also alleges that the trial court failed to consider applicable mitigating factors. However, the defendant does not specify what factors were not considered by the trial court. T.C.A. § 40–35–113 states that a mitigating factor should only be applied if appropriate for the offense. Since the trial judge did not apply any mitigating factors and since the defendant does not specify which factors were omitted, we must assume that the mitigating factors were inapplicable.

 Stacey argues that the trial court improperly used as an enhancement factor the fact that he had pending criminal charges and that this was evidence of criminal behavior under T.C.A. § 40–35–114(1). There is no evidence in the record that these charges against the defendant were anything more than charges. The defendant has not been convicted on any of these pending charges, and is presumed innocent until convicted. Therefore, it was improper for the trial judge to consider them in sentencing the defendant. *See State v. Miller*, 674 S.W.2d 279, 284 (Tenn.1984).

Stacey also contends that the trial court failed to consider relevant mitigating factors, but he too, like Buckmeir, fails to state which factors were overlooked. As stated previously, T.C.A. § 40–35–113 states that a mitigating factor should be applied only if appropriate for the offense. Therefore, since the trial judge did not apply any mitigating factors and without any record as to what those factors might be, we must assume that the mitigating factors were inapplicable.

The misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. *State v. Karl Christopher Davis*, No. 01C01–9202–CC–00062, Williamson County, 1993 WL 75046 (Tenn.Crim. App. filed March 17, 1993, at Nashville); *State v. Bernell B. Lawson*, No. 63, Cumberland County, 1991 WL 84071 (Tenn.Crim. App. filed May 23, 1991, at Knoxville). However, in determining the percentage of the sentence to be served in actual confinement, the court must consider enhancement and mitigating factors as well as the purposes and principles of the Criminal Sentencing Reform Act of 1989, and the court should not impose such percentages arbitrarily. T.C.A. § 40–35–302(d).

We find that the reduced sentence of six (6) months for each defendant is supported by the record and is consistent with the purpose and principles of the Criminal Sentencing Reform Act of 1989. *See* T.C.A. § 40–35–302(b). We do not find that the improper use of enhancement factors requires further modification of the sentences.

In conclusion, we find that there was sufficient evidence for a jury to conclude beyond a reasonable doubt that the defendants were guilty of assault. However, in the absence of a complete instruction to the jury as to the varying grades of misdemeanor assault, we find that each defendant's conviction must be reduced to Class B misdemeanor assault and their sentences reduced to six (6) months. We order Buckmeir to serve seventy-five percent (75%) of a six (6) month sentence, and we order Stacey to serve thirty (30) days of a six (6) month sentence, with the balance on probation.

SCOTT, P.J., and TIPTON, J., concur.