# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### JANUARY SESSION, 1998

FILED

November 16, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 01C01-9701-CC-00035 |
| | ) | |
| Appellant, | ) | |
| | ) | MAURY COUNTY |
| V. | ) | |
| | ) | |
| | ) | HON. JAMES L. WEATHERFORD, |
| PHILLIP DREW CANTWELL, | ) | JUDGE |
| | ) | |
| Appellee. | ) | (ENVIRONMENTAL VANDALISM) |

FOR THE APPELLEE:

**GARY M. HOWELL**
P.O. Box 442
Columbia, TN 38402

**DELILAH A. SPEED**
P.O. Box 973
Columbia, TN 38402

FOR THE APPELLANT:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**ALBERT L. PARTEE, III**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN 37243

**T MICHAEL BOTTOMS**
District Attorney General

**ROBERT C. SANDERS**
Assistant District Attorney General

**JESSE DURHAM**
Assistant District Attorney General
P.O. Box 459
Lawrenceburg, TN 38478

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

Phillip Drew Cantwell, the Defendant and owner of Cantwell Enterprises, Inc., was indicted by the Maury County Grand Jury on one (1) count of violating the Water Quality Act and five (5) counts of environmental vandalism. Two (2) of the five (5) counts of environmental vandalism were classified as Class B felonies, two (2) were classified as Class C felonies, and one (1) as a Class E felony. Following a jury trial, the Defendant was convicted of two (2) lesser grade Class D counts of environmental vandalism and acquitted of all other charges. Dallas Cantwell and Sherill Sanders, co-defendants, were also indicted on similar charges. Dallas Cantwell is the Defendant's father, and Sherill Sanders was the manager of Cantwell Enterprises. Both co-defendants were acquitted of all charges. Following the sentencing hearing, the Defendant was sentenced to serve two (2) years for each count of environmental vandalism, to be served concurrently. The sentences were suspended with Defendant placed on probation. The Defendant was also ordered to pay $1,524.71 in court costs. He filed a motion for new trial, but it was denied following a hearing. The Defendant did not appeal. The State appeals from the trial court's sentencing order. We affirm the judgment of the trial court.

While the sufficiency of the evidence is not an issue, a summary of the facts is necessary for our sentencing review. Dick Wilson, an aquatic biologist employed by the Tennessee Wildlife Resources Agency, received a complaint on December 1, 1994, from Vance Owen who was hunting near Columbia and observed a possible contamination problem with the water in some seep springs. On December 2, 1994, Wilson and a field agent, Wayne Pressler, accompanied Owen to the seep springs

for testing and observation. These seep springs were located on Henry Daimwood's property. A plant operated by Cantwell Enterprises, Inc., was located up a slope from the seep springs, and it appeared to Wilson that a large amount of discolored water had come down the slope. There were many dead trees and vegetation in the area. Wilson observed the plant and found ditches full of discolored water with yellow and black stains. Wilson went to the plant and spoke with Sherill Sanders, a co-defendant and the plant manager. Sanders told Wilson that he was aware of the complaints and had already taken a sample from the seep springs but had not yet had it analyzed.

On February 22, 1995, Wilson led in the execution of a search warrant at the Cantwell Enterprises, Inc., plant during which liquid and solid samples were taken. Industrial wastes from three (3) different directions were observed by Wilson as flowing through a series of hoses, ditches and spillways towards the dead zone of vegetation and trees.

Gordon Caruthers, an Environmental Specialist with the Tennessee Department of Environmental Control (TDEC), performed an inspection of the plant in January 1992 and found molten sulphur and ammonium bisulfite. Caruthers spoke with the Defendant as the representative for Cantwell Enterprises, Inc. Caruthers explained to the Defendant the environmental problems with the plant and described the state requirements for prevention and control of environmental spills. The Defendant responded that he would obtain the permits and construct the containment structures as required. After Caruthers tried to demonstrate the consequences of these spills, Defendant indicated that he understood the dangers of the unlawful discharges into the environment.

Ann Rochelle, an environmental specialist and employee of the Water Pollution Control division at the TDEC, visited the Cantwell plant site on January 17, 1992, pursuant to a prior complaint under the Water Quality Control Act. The plant had no permit to discharge industrial wastes under the Water Quality Control Act. As a result of her inspection, Rochelle sent a notice of non-compliance to the company and asked that containment structures be built. During March 1992, Rochelle inspected the plant on two occasions and found further spills and no containment structures in place.

Margaret Morgan, an owner of land damaged by the spills from the Cantwell plant, testified that she gave no one permission to discharge chemicals or industrial waste on her property. She described the property as a wide strip with absolutely nothing, only bare dirt and gullies.

Glenn Hulen owns property on which Columbia Concrete is located. This property borders the Cantwell plant to the south, west and north. Since the Cantwell plant had been in operation, Hulen noticed areas of dead vegetation on his property which used to be "a jungle."

Tim Stewart, employee of the Superfund Division of the TDEC, assessed property damage caused by the environmental spillage from Cantwell enterprises. Stewart calculated the damage to be $500,000.00.

Wayne Chapman, a former employee of Cantwell Enterprises, testified that while he worked at the plant he noticed leaking hoses around different parts of the plant. When these hoses leaked, the containment trench around the operating block

of the plant would overflow. Chapman recalled that the Defendant was there at times when the overflow occurred. After Chapman brought the leaking hoses to Defendant's attention, the Defendant instructed Chapman to try to stop the leaks or to cover them up as best as he could. Chapman worked with the Defendant to clean out railroad tank cars. The ammonium bisulfite would be either poured out of the trucks onto the ground or pumped up on the bank and blown onto the ground.

James Robert Orr, employee of Environmental Resources Management Southeast, an environmental consulting firm, assessed the environmental impact of the spillage at the Cantwell plant. In his opinion, the cost for restoration for the Morgan property ranged from $179,342.00 to $207,044.00. The cost for the restoration of the property owned by Glenn Hulen and Columbia Concrete was estimated at a range of $69,692.00 to $76,580.00.

When the length, range or the manner of service of a sentence is challenged, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his

own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The State argues that the trial court imposed the "absolute rock bottom sentence" for Defendant to serve. The trial court ordered Defendant to serve two (2) concurrent sentences of two (2) years for each count of Class D environmental vandalism. The sentencing range for a Class D felony for a Range I offender is two (2) to four (4) years. Tenn. Code Ann. §§ 40-35-105(b), -112(a)(4). Following the sentencing hearing, the trial court stated as follows:

> Now, the law requires the court in this sentencing act to take certain things into consideration in deciding how many years out of that close range, or what period of time out of that close range that the court should set sentence. And really, as far as enhancement factors, the only enhancement factor I see that would apply, that I would be comfortable with applying, is that the offense involved more than one victim. Of course, this situation, the debris, chemical debris was running off in fairly well all directions and I think that without question it damaged more than one person. I'm satisfied from the proof that it did that. That's really the only enhancing factor that I see.
>
> As far as mitigating factors, of course the main one, I guess, is the fact that there was nobody physically injured like in an aggravated assault case. These other mitigating factors set forth through the pleading filed by the defendant, I don't think really would be applicable.

-6-

Another thing that I'm taking into consideration is the jury didn't fix any fine in any of these cases, in either of these cases. The defendant has not been previously convicted of anything that I can determine from the pre-sentence report.

I'm going to impose a sentence of two years in each of these cases and in considering whether or not these sentences should run consecutive or concurrent, again, in looking at the matters that the court has to take into consideration, I really don't find any of the factors set forth in the 40-35-115 that would apply, so I'm going to let those sentences run concurrently.

As far as the cost for the preparation of this case, the court will take into consideration the fact that there were other counts against this defendant that he was acquitted on. I'm going to take into consideration the fact that there were two other defendants that were totally acquitted and I'm really not familiar with requiring a defendant to pay the cost for preparation for this type suit. I don't think that there's been all that many suits of this sort in this state. I would be inclined to require this defendant to pay $10,000.00 in the expenses or preparation or whatever you want to call it, if there can be any authority submitted to me by the State where that's been done and approved in any criminal case. This, of course, is an unusual case. We had a lot of technical witnesses, chemists and those type people and I know that it was tremendously expensive. If the State can find me any proof that I think would substantiate him paying $10,000.00 toward these expenses in bringing this thing to court, then I would require that as part of his probation.

Our review of this sentence is de novo, without a presumption of correctness, as the trial court did not specify the weight afforded to the enhancing and mitigating factors, nor did it discuss all the enhancement factors as urged by the State at the sentencing hearing. In addition, there is no mention in the record of the factors the trial court relied upon in granting the Defendant full probation as an alternative sentence. In determining the length of the Defendant's sentence, the trial court relied upon the evidence at trial and the sentencing hearing. The trial court relied upon the pre-sentence report in determining that the Defendant had no prior criminal record. As the Defendant is a standard offender convicted of Class D felonies, he

was presumed to be a favorable candidate for alternative sentencing options. Tenn. Code Ann. § 40-35-102(6).

The trial court found that the offense involved more than one (1) victim as the environmental spill clearly affected more than one (1) person. Tenn. Code Ann. § 40-35-114(3). This enhancement factor was applied erroneously as there were separate convictions for each victim. State v. Hoyt, 928 S.W.2d 935, 948 (Tenn. Crim. App. 1995) (*citing* State v. Lambert, 741 S.W.2d 127, 134 (Tenn. Crim. App. 1987)). It is not appropriate in this case to count as "victims" those who were named in counts of the indictment where Defendant was acquitted. After finding that no other enhancement factors applied, the trial court reasoned that no one was physically injured during the commission of the criminal offenses. Tenn. Code Ann. § 40-35-113(1). The trial court also determined that the Defendant had no prior convictions. Tenn. Code Ann. § 40-35-113(13). The trial court considered the fact that the jury did not fine the Defendant as a condition of his convictions, but we do not place much weight upon this factor. While Defendant urged that other mitigating factors were applicable, the trial court did not agree.

The State urges that four (4) other enhancement factors apply. First, the State argues that Defendant was a leader in the commission of an offense involving two (2) or more criminal actors because his employees were directed to make illegal environmental discharges. Tenn. Code Ann. § 40-35-114(2). The application of enhancement factor 2 contemplates on offense involving two (2) or more criminal actors. State v. Carter, No. 03C01-9603-CC-00102, Greene County, slip op. at 11 (Tenn. Crim. App., at Knoxville, March 4, 1997) (No Rule 11 application filed)

(citations omitted). As reflected in the jury's verdict, this offense involved only one (1) criminal actor, the Defendant.

In light of the additional crimes with which Defendant was charged, the State argues that Defendant's criminal behavior should result in the enhancement of his sentence. Tenn. Code Ann. § 40-35-114(1). The State urges this court to consider the case of State v. Carico, _____ S.W.2d _____, No. 03S01-9610-CR-0009, Hawkins County (Tenn., at Knoxville, December 29, 1997), as authority that Defendant's prior criminal behavior for which there has been no conviction may be used to enhance a sentence. In Carico, the defendant was accused of multiple incidences of sexual abuse. The defendant was ultimately convicted of only one (1) offense per time period as alleged in the indictment and the court held that other incidences of conduct could be used to enhance the sentence. Carico, slip op. at 17. However, in the case sub judice, the jury was allowed to consider other incidences of criminal conduct as alleged in the indictments and found Defendant not guilty. Mere charges are not considered prior criminal behavior. State v. Buckmeir, 902 S.W.2d 418, 424 (Tenn. Crim. App. 1995). Defendant was not convicted of those incidences of criminal conduct for which he was charged and tried and found not guilty. Therefore, it would have been improper for the trial court to use them in enhancing the Defendant's sentence.

The State also urges this court to find that the amount of property taken from the victims was particularly great. Tenn. Code Ann. § 40-35-114(6). The trial court declined to apply this factor on the basis that the jury failed to fix any fines against the Defendant. Testimony was given that the damage to property relevant to the two (2) convictions approached $280,000.00. In light of the proof in the record of the

amount of damage done to the properties involved, this enhancement factor should have been applied.

Finally, the State argues that the Defendant abused a special skill in a manner that significantly facilitated the commission of the offenses. Tenn. Code Ann. § 40-35-114(15). The State contends that the Defendant's education and expertise in using chemicals proves he "knew better than to do as he did." While Defendant may have specialized knowledge regarding the manufacturing of chemicals, there is no evidence in the record that his skill was so specialized as to facilitate the commission of the acts of environmental vandalism. The State cites the case of State v. Candler, 728 S.W.2d 756 (Tenn. Crim. App. 1986), in which the defendant businessman wrote worthless checks used to defraud a bank. In addition to the fact that Candler was decided prior to the 1989 Sentencing Act, the State's reliance is misplaced. In Candler, the court held that the Defendant's conduct in writing the worthless checks was in reckless disregard of the interests of stockholders, depositors, and borrowers. Id. at 762. Because that defendant took advantage of a special trust, this conduct justified consecutive sentences. Id. Candler does not deal with the issue that a defendant's abuse of a special skill justifies the application of enhancement factor (15).

The State also filed supplemental authority supporting their argument that Defendant abused a special skill. See U.S. v. Roggy, 76 F.3d 189 (8th Cir. 1996). In Roggy, the defendant was an expert in pesticides and utilized his knowledge to use a prohibited pesticide which was financially beneficial to him. In the case sub judice, the Defendant did not use any special expertise in committing these offenses. In fact, the Defendant's actions were committed openly such that the State filed a

non-compliance complaint against him three (3) years prior to the execution of the search warrant which led to criminal charges. Defendant did not use any special knowledge to conceal his acts, therefore, <u>Roggy</u> is distinguishable. In any event, the ruling in <u>Roggy</u> does not bind this court. The United States Supreme Court is the only federal court Tennessee courts are bound to follow. <u>See</u> <u>State v. McKay</u>, 680 S.W.2d 447, 450 (Tenn. 1984); <u>cert</u>. <u>denied</u>, 105 S.Ct. 1412 (1985).

The State then argues that probation was an inappropriate alternative sentence given the type of crime Defendant committed. A defendant sentenced to eight (8) years or less who is not an offender for whom incarceration is a priority is presumed eligible for alternative sentencing unless sufficient evidence rebuts the presumption. Rebuttal evidence includes:

> A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103.

However, the act does not provide that all offenders who meet the criteria are entitled to such relief; rather, it requires that sentencing issues be determined by the facts and circumstances presented in each case. <u>See</u> <u>State v. Taylor</u>, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

In determining whether to grant probation, the trial court must consider the nature and circumstances of the offense, the defendant's criminal record, his

background and social history, his present condition, including his physical and mental condition, the deterrent effect on other criminal activity, and the likelihood that probation is in the best interests of both the public and the defendant. Stiller v. State, 516 S.W.2d 617, 620 (Tenn. 1974).

While the defendant on appeal usually has the burden of establishing his suitability for full probation and demonstrating to this court that probation best serves the ends of justice, the public and himself, the State appeals the grant of full probation in this case. Tenn. Code Ann. § 40-35-303(b); State v. Bingham, 910 S.W.2d 448, 455-46 (Tenn. Crim. App. 1995). The burden is thus on the appellant to show that the sentencing in granting probation was erroneous. Tenn. Code Ann. § 40-35-402, Sentencing Commission Comments.

Defendant does not have a long history of criminal conduct nor does he need confinement to avoid depreciating the seriousness of the offense. Tenn. Code Ann. § 40-35-103(1). While the State contends that a sentence of incarceration would be a deterrence to further acts of environmental damage, we see no reason to impose a sentence of incarceration when the State has failed to point to any portion of the record which reflects proof presented of the need for deterrence in the jurisdiction. See State v. Zeolia, 928 S.W.2d 457, 461-62 (Tenn. Crim. App. 1996)(citations omitted). In addition, measures less restrictive than confinement have not been applied unsuccessfully to the Defendant. Tenn. Code Ann. § 40-35-103(1)(C). As none of these factors apply, confinement would not have been a proper sentence and the trial court appropriately determined that probation would best serve the interests of the Defendant and the public.

The State argues that the Defendant should be ordered by this court to pay restitution to the victim, Margaret Morgan in the amount of $5,000.00. We note that a panel of this court has previously held that the State does not have the right to appeal the issue of the trial court's failure to order restitution. See State v. Kevin Crespo, No. 03C01-9504-CR-00118, Sevier County, slip. op. at 1 (Tenn. Crim. App., at Knoxville, April 29, 1997) (No Rule 11 application filed). We also note that the legislature has recently enacted Public Acts of 1998, chapter 796, effective April 23, 1998 allowing the State to appeal the trial court's failure to order the Defendant to make reasonable restitution. In the case sub judice, and based upon the record available to us, we cannot conclude that the trial court erred or abused its discretion in declining to order restitution.

The State also argues that the trial court erred by not ordering the Defendant to pay "costs of enforcement." The State specifically asked for the cost of enforcement reimbursement in the amount of $49,623.18. The State cites Tennessee Code Annotated section 40-35-303(d)(9) in support of this issue and argues that "cost of enforcement" as a condition of probation is "reasonably related to the purpose of the offender's sentence and not unduly restrictive of the offender's liberty, or incompatible with the offender's freedom of conscience, or otherwise prohibited by this chapter." Tenn. Code Ann. § 40-35-303(d)(9).

Among the costs of prosecution which the State says should be reimbursed by the Defendant are hourly wages of various Tennessee Wildlife Resources Agency employees, mileage costs for agency vehicles, airplane, and video and still pictures. Likewise, costs of laboratory and salary costs of other witnesses were included in the total of $49,623.18. It is the opinion of this court that Tennessee Code

Annotated section 40-35-303(d)(9) does not authorize the relief sought by the State, as that statute does not give unfettered authority to trial courts to place conditions of probation upon a defendant. See State v. Burdin, 924 S.W.2d 82, 87 (Tenn. 1996). Of course, a defendant could still negotiate a plea agreement with the State that requires "cost of enforcement" to be paid as a condition of probation. In order for a defendant absent a negotiated plea agreement to be ordered to pay the State the costs of prosecuting the case as a condition of probation, we feel that this is a matter more appropriately addressed in specific legislation by the General Assembly and not by judicial interpretation of Tennessee Code Annotated section 40-35-303(d)(9).

Even if that statute could be held to authorize the required condition of probation sought by the State, we feel that the State failed to put sufficient proof forward to make this reasonably relate to the convictions for which Defendant has been placed on probation. He was charged with seven (7) counts and found not guilty of five (5) of those counts. The two (2) convictions were of lessor grade offenses. Two co-defendants were acquitted of all charges against them, which were apparently the identical charges placed against the Defendant. While the trial court stated that it would order the Defendant to pay $10,000.00 towards the cost of reimbursement if the State could cite any appropriate legal authority authorizing the trial court to do so, this figure of $10,000.00 is not supported by any proof in the record.

Upon our conclusion that one enhancement factor found by the trial court was erroneously applied, but that another enhancement factor should have been applied,

and the finding of mitigating factors was appropriate, upon our <u>de novo</u> review of the sentence, we affirm the judgment of the trial court.


_____
THOMAS T. WOODALL, Judge


CONCUR:


_____
DAVID H. WELLES, Judge


_____
JERRY L. SMITH, Judge