IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

NOVEMBER SESSION, 1997

FILED

March 4, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 01C01-9610-CR-00445 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | DAVIDSON COUNTY |
| VS. | ) | |
| | ) | HON. THOMAS H. SHRIVER |
| SUE ANN TIDWELL, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Assault & Disorderly Conduct) |

ON APPEAL FROM THE JUDGMENT OF THE
CRIMINAL COURT OF DAVIDSON COUNTY

FOR THE APPELLANT:

JEFFREY A. DEVASHER
On Appeal
Senior Assistant Public Defender

JEFFERSON T. DORSEY
At Trial
Assistant Public Defender
1202 Stahlman Building
Nashville, TN 37201

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

GEORGIA BLYTHE FELNER
Assistant Attorney General
425 5th Avenue North
Nashville, TN 37243

VICTOR S. JOHNSON
District Attorney General

PAMELA ANDERSON
Assistant District Attorney General
1202 Stahlman Building
Nashville, TN 37201

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Sue Ann Tidwell, appeals as of right pursuant to Rule 3, Tennessee Rules of Appellate Procedure. She was convicted after a bench trial of one count of simple assault, a Class B misdemeanor, and one count of disorderly conduct, a Class C misdemeanor.[1] She was sentenced to six months, suspended with probation, for the assault conviction and ordered to pay a fifty-dollar ($50) fine for the disorderly conduct conviction. She appeals both of her convictions and the sentence for assault, raising two issues: (1) That the evidence was insufficient to support a verdict of guilt for assault or for disorderly conduct, and (2) that the trial court erred in imposing the maximum sentence for assault and failing to grant judicial diversion. We affirm the judgment of the trial court.

On January 19, 1996, Willie Burks[2] with the Metropolitan Animal Control office in Nashville, Tennessee was conducting a routine patrol. His duties included patrolling for and picking up stray animals as well as issuing citations or summons to animal owners. He was driving on Louisiana Avenue and noticed two loose dogs, a black Labrador Retriever and a German Shepherd mix. They were located in front of a residential dwelling at 6009 Louisiana. While he was attempting to apprehend the dogs, the Defendant emerged from her house across the street at 6006 Louisiana. Burks asked the Defendant about the dogs

---

[1] Tenn. Code Ann §§ 39-13-101(a)(3), 39-17-305(b).

[2] We note that in the record, he has been alternately referred to as "Burks" and "Burk." We will refer to the witness as "Burks" in this opinion.

and she replied that she owned the Shepherd mix. Burks informed the Defendant that he would have to issue her a citation or pick up the dogs.

The Defendant attempted to put the Lab inside the fence around the 6009 property. Burks told her she could not do that because it was not her dog and that if the owner was not home, he would have to pick up the dog. The Defendant started talking loudly and cursing Burks. The Defendant told him that he had no right to be on the neighbor's property. Burks went into the yard to get the Lab and the Defendant distracted him. The dog ran away. Burks informed the Defendant that he was going to write her a summons for interfering and for letting her dog run loose. She told him he "wasn't gonna write her anything." Burks asked for proof of the Shepherd mix's vaccinations and the Defendant said Burks would have to call the animal clinic. The Defendant told Burks that she was not going to let him pick up the dogs. The Defendant continued to "rant and rave" at Burks, so he called his office to dispatch a police officer to the scene. He informed the Defendant that he was going to call the police and she told him she did not care and went back across the street to her house.

Burks sat in his truck while he waited for an officer to arrive. He observed a "Chihuahua looking dog" running back and forth between the Defendant's property at 6006 and the property at 6008 Louisiana. Both houses were surrounded by a fence. There was a fence dividing the two houses with an opening between them through which the dog was running. Officer George Espinoza of the Nashville Metropolitan Police Department arrived. Burks explained the situation to Espinoza. The Defendant ran up to the police car and told Espinoza that they did not know the law and that Burks could not enter the

neighbor's property. Burks asked who owned the property adjacent to the Defendant's where he saw the little dog running and she told him she did not know who owned the property. The house at 6008 appeared to be vacant. The Defendant went inside her house. Burks tried to catch the "Chihuahua" and the Defendant yelled "if he don't leave my dog alone I'm gone(sic) bust him in his damn head." The Defendant began to run off her front porch, down a few steps. Officer Espinoza, who was standing at the bottom of the porch steps, stood between the Defendant and Burks and told the Defendant that she did not need to do that. The Defendant pushed Officer Espinoza with both hands. He then decided to arrest the Defendant and grabbed her left arm and walked her towards his cruiser. The Defendant was yelling that she would not leave her elderly mother and aunt alone in the house. She dropped herself to the ground and yelled at passing cars that Espinoza and Burks were trying to hurt her and take her dogs. A neighbor came by and offered assistance with the elderly ladies if that was needed.

Officer Espinoza radioed for backup. Officer Suel arrived on the scene and also had no luck in gaining the Defendant's cooperation. The officers decided to contact Sergeant Ogren. Sergeant Ogren could hear the Defendant yelling in the background during the conversation. When Ogren arrived, the Defendant went back inside her house. Ogren went to the door and knocked and told the Defendant that he needed to come in. The Defendant allowed Sergeant Ogren inside and he requested to see her driver's license so Burks could issue the citations. The Defendant apologized and attempted to demonstrate how lightly she had pushed Officer Espinoza. Sergeant Ogren took the license outside and the Defendant again locked herself inside and would not open the door. No

arrest was made at that time because of concern for the welfare of the elderly women in the home.  The officers took her license to the property room for her to retrieve rather than leaving it on the doorstep.

The Defendant testified at trial and presented a quitclaim deed indicating that she was an owner of the property at 6008 Louisiana Ave., the property adjacent to hers to which her dog was running.  She described her small dog as a Dachshund.  When the dogcatcher, Mr. Burks arrived, the Defendant said she assisted him in locating the owner of the black Lab that was running loose.  The Defendant also said she attempted unsuccessfully to put the Shepherd mix dog in her yard, but did not state that it belonged to her.  She testified that the Lab started to growl and she was telling Burks "you ain't supposed to be in this yard, get out of the yard so he said lady go on in your house and shut up, so I kind of stepped back and he said he was going to call the police."  When Officer Espinoza arrived, the Defendant stated that she did not believe that Burks had a right to go into the neighbor's yard.  The Defendant then noted that Burks was stating that he was going to get her Dachshund that he observed running between the yards. She went inside her house and saw Burks with his "dog pole" talking with Espinoza.  When she saw Burks and Espinoza enter her yard, she came out of the house and told Burks to leave.  She said "Make him stop" to Espinoza and was standing near him on the porch steps.  She testified that she bumped Espinoza to get to her dog, which she was afraid would be hurt by the "dog pole."   When Espinoza arrested her, she dropped to the ground and screamed.  The Defendant denied threatening to "bust" Burks' head.  She also denied pushing Officer Espinoza, but stated that "they kind of hit hands" as she ran by because she was holding them up to protect her chest.  She denied

-5-

screaming at passing cars. The Defendant denied interfering with Burks' attempts to catch the dogs, specifically that she did not physically step in front of him. She admitted that she told him to leave the dog alone.

Bench warrants were issued in the Davidson County Metropolitan General Sessions Court on behalf of Willie Burks and Officer Espinoza for two counts of assault and one count of disorderly conduct. The Defendant was convicted on March 25, 1996 in General Sessions Court of both counts of assault and the count of disorderly conduct. She appealed to the Criminal Court of Davidson County on March 29, 1996. A bench trial was conducted, after which the Defendant was convicted of one count of assault on Officer Espinoza and one count of disorderly conduct. She was sentenced to six months on probation and a fifty-dollar ($50) fine, respectively. The Defendant filed a notice of appeal to this Court on October 1, 1996. She also filed a petition to this Court for extraordinary appeal pursuant to Rule 10, Tennessee Rules of Appellate Procedure, to stay execution of her sentence pending her appeal. This Court ordered, under Rule 8 of the Tennessee Rules of Appellate Procedure, governing conditions of release pending appeal, that the petition be granted because the appeal would become moot in the absence of a stay of execution.

We now consider the merits of the Defendant's issues in this appeal. In her first issue, the Defendant contends that the evidence was insufficient to support her convictions. When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v.

Virginia, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Nor may this court reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

In a case tried without a jury, the verdict of the trial judge is entitled to the same weight on appeal as a jury verdict. State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. Cabbage, 571 S.W.2d at 835. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

The Defendant argues that the evidence was insufficient to support a verdict of guilt for assault. She was convicted based on the following provisions regarding the offense of assault: "(a) A person commits assault who: (3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." Tenn. Code Ann. § 39-13-101(a)(3). She contends that the State failed to prove that she intentionally or knowingly committed the assault. "'Intentional' refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to

engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-106(a)(18). "Knowing refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-106(a)(20).

The Defendant argues that any contact with Officer Espinoza was an unintentional result of her rushing down the stairs to give aid to her dog. Yet, considering the evidence in the light most favorable to the State, it reflects that the Defendant actively pushed the officer. Willie Burks testified that as the Defendant was running off the porch, Officer Espinoza told her to stop and stepped in front of her. He further testified that "she pushed him and almost knocked him off his feet." Officer Espinoza testified that the Defendant came down the steps and he told her not to go toward Burks. He stepped in front of her and she pushed him "[j]ust opened hand, just pushed me backwards [with] two hands." The Defendant herself testified that she knew her body would touch the officer's if she tried to go around him on the steps. She testified that she anticipated him getting in front of her and admitted that she held her hands up. From the testimony presented at trial, there is sufficient evidence to establish that the Defendant either intentionally or knowingly engaged in conduct that would result in an assault as indicated by Tennessee Code Annotated section 39-13-101(a)(3).

The Defendant also argues that the State failed to prove that the contact made with Officer Espinoza was "extremely offensive or provocative." Specifically, she contends that the officer did not testify that it was offensive or that he felt provoked. However, establishing this element of the offense does not require proof that a certain individual experienced the act as extremely offensive or provocative, but that a "reasonable person" would consider the act as such. See Tenn. Code Ann. § 39-13-101(a)(3). This is an objective standard measured by what a reasonable person would think if he or she were pushed backwards. With this in mind, it is likely that a reasonable person would consider being shoved by someone with two hands as offensive or provocative. In addition, Officer Espinoza did testify that he felt angry "[w]hen she pushed me yes, I was angry, cause if I pushed her she'd be angry." The Defendant testified that after she pushed him the officer said "'you don't touch me' and he pushed me back. He said 'you keep your hands off of me' and his mouth started quivering real bad." This we believe is sufficient to sustain a finding of guilt for the offense of assault.

The Defendant also charges that the evidence was insufficient to sustain her conviction for disorderly conduct. She was convicted under the provision of the statute that reads: "(b) A person also violates this section who makes unreasonable noise which prevents others from carrying on lawful activities." Tenn. Code Ann. § 39-17-305(b). The Defendant argues that the State failed to prove that she made unreasonable noise although she yelled at passing cars. Furthermore, she claims that her behavior was protected speech as provided for in the First Amendment to the Constitution of the United States and Article I, section 19 of the Tennessee Constitution. The Defendant cites two cases from

this Court for the proposition that her verbal communications constituted legitimate opposition to police action rather than "fighting words" that would sustain a conviction for disorderly conduct. See Garvey v. State, 537 S.W.2d 709 (Tenn. Crim. App. 1975); State v. Ina C. Scott, C.C.A. No. 17, Meigs County (Tenn. Crim. App., Knoxville, Mar. 16, 1989). In Garvey, the Defendant yelled "sooey" at a police officer, which was not considered to be "fighting words." Garvey, 537 S.W.2d at 711. In Scott, the defendant, with the assistance of two compatriots, objected to her husband's arrest and "mounted a loud, profane and lewd verbal assault on the sheriff." Slip op. at 2. A crowd of 30 or 40 persons gathered, her friends even tried to get her to calm down, yet she eventually "'slung a cup of ice across the lot' and called the sheriff 'a fat son of a bitch.'" Id. A panel of this Court found her words to be protected speech, noting that she never threatened any form of physical assault. Slip op. at 5. The State cites State v. Creasy, 885 S.W.2d 829 (Tenn. Crim. App. 1994), in which the defendant was convicted of disorderly conduct when, in response to a patrol officer's attempt to issue him a parking citation, he placed himself between the officer and the car, hurling epithets, clenching his fist, and pointing at the officer. Id. at 831. This Court distinguished Creasy from Scott, noting that the defendant's behavior was threatening such that it would support a disorderly conduct conviction. Id. at 832.

We note that the opinions cited address different portions of the disorderly conduct statute than that with which we are concerned. While the aforementioned cases dealt with whether the defendants' speech rose to the level of threatening conduct, the case sub judice involves the determination of whether the Defendant's conduct prevented Burks and Espinoza from carrying

-10-

on lawful activity. There is evidence in the record that the Defendant approached Burks when he first attempted to catch the Lab and the Shepherd mix. He testified that the Defendant tried to put the Lab inside the neighbor's fence and when he went in to catch the dog, she began talking loud and cursing at him. She distracted Burks, which resulted in the dog running off. Burks told the Defendant he was going to write her a citation and she disagreed. The Defendant told Burks she would not allow him to pick up the dogs. When Officer Espinoza was dispatched to the scene, the Defendant continued to object loudly. Burks' attempts to catch the Dachshund running between the Defendant's yard and the adjacent house were thwarted when the Defendant threatened to "bust your damn head," and later ran toward him. This culminated in the assault against Espinoza. Afterwards, the Defendant continued to yell at passing cars and resisted producing her driver's license by locking herself in the house.

The Defendant's course of conduct, which consisted of yelling, cursing and threatening Burks, resulted in his failure to engage in his assigned duty to procure the stray dogs.[3] We believe there was sufficient proof to establish that the Defendant engaged in disorderly conduct prohibited by Tennessee Code Annotated section 39-17-305(b). Therefore, we conclude that this issue is without merit.

In her second issue, the Defendant contends that the trial court erred by imposing the maximum sentence for assault and for failing to grant judicial diversion pursuant to Tennessee Code Annotated section 40-35-313. The Defendant's conviction for assault by engaging in extremely offensive or

---

[3] See Nashville, Tenn., Code §§ 8.04.010, 8.04.120.

provocative contact constitutes a Class B misdemeanor.  See Tenn. Code Ann. § 39-13-101 (a)(3), (b).  She was sentenced to six months probation, the maximum length of sentence for that misdemeanor class.  See Tenn. Code Ann. § 40-35-111(e)(2).

When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d).  This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment.  Tenn. Code Ann. §§ 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then

we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. State v. Creasy, 885 S.W.2d 829 (Tenn. Crim. App.1994). The Criminal Sentence Reform Act of 1989 requires trial judges sentencing misdemeanor defendants to set a percentage of the sentence after which a defendant is eligible for certain rehabilitative release programs, such as work release, furloughs, and trusty status. Tenn. Code Ann. § 40-35-302(d). The percentage must be between zero and seventy-five percent. In determining the percentage of the sentence, the court should consider enhancement and mitigating factors as well as the legislative purposes and principles related to sentencing. State v. Palmer, 902 S.W.2d 391, 393 (Tenn. 1995); see also Tenn. Code Ann. § 40-35-302(d). Furthermore, the trial judge has the authority to place the defendant on probation immediately after sentencing. Tenn. Code Ann. § 40-35-302(e)(2).

The Defendant charges that the trial court failed to consider and to place on the record the applicable statutory enhancement and mitigating factors when determining the length of her sentence. However, we find no statutory requirement that a trial judge document consideration of the enhancement and mitigating factors unless ordering a term of confinement as part of a misdemeanor sentence. The Code provision governing misdemeanor sentences states that, when imposing a misdemeanor sentence, the trial court "shall fix a specific number of months, days or hours . . . The court shall impose a sentence consistent with the purposes and principles of this chapter." Tenn. Code Ann. §

40-35-302(b). When confinement is ordered, "[i]n determining the percentage of the sentence to be served in actual confinement, the court shall consider the purposes of this chapter, the principles of sentencing, and the enhancement and mitigating factors set forth herein, and shall not impose such percentages arbitrarily." Tenn. Code Ann. § 40-35-302(d); Palmer, 902 S.W.2d at 393-94.

We observe that the trial judge failed to state on the record his sentencing decision in reference to the purposes and principles of the Act, thus warranting a de novo review. Yet, the misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. State v. Buckmeir, 902 S.W.2d 418, 424 (Tenn. Crim. App. 1995). The Defendant was convicted of assaulting a police officer as he attempted to prevent another possible assault by the Defendant on an animal control official. With the circumstances of the case in mind, we cannot conclude that a six-month sentence was excessive. Nor can we conclude that the trial court erred by failing to consider enhancement and mitigating factors because the Defendant was placed on full probation. Consideration of the factors is only required when a term of confinement has been ordered. Therefore, we find this issue to be without merit.

The Defendant also charges that the trial court erred by failing to order expungable probation, or in other words, judicial diversion. We note initially that, because the Defendant has failed to cite authority to support her argument, this issue is waived. Tenn. Ct. Crim. App. R. 10(b); State v. Killebrew, 760 S.W.2d 228, 231 (Tenn. Crim. App. 1988). The Defendant notes that the General Sessions judge ordered such expungable probation. The record indicates that the Criminal Court judge stated: "I sentence her to six months not on a 40-35-313

-14-

as was below . . . The six months will be on supervised probation . . . ." Yet, we have found nothing in the record that indicates that the Defendant requested judicial diversion at the Criminal Court level.   Under these circumstances, we cannot conclude that the trial court erred in denying judicial diversion.

Accordingly, the judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
JOHN H. PEAY, JUDGE

_____
JOSEPH M. TIPTON, JUDGE