IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

## STATE OF TENNESSEE v. RONALD WAYNE ASHBY

**Direct Appeal from the Circuit Court for Lincoln County**
**No. S9800101    William Charles Lee, Trial Judge**

---

**No. M1999-01247-CCA-R3-CD - Decided July 12, 2000**

---

The defendant appeals his aggravated burglary conviction. He asserts that insufficient evidence supported the jury verdict, that the trial court improperly admitted evidence of another crime, and that his sentence is excessive. We conclude that sufficient evidence supported the verdict and that the "other crime" evidence was properly admitted. We affirm the sentence.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

WILLIAMS, J., delivered the opinion of the court, in which WADE, P.J., and SMITH, J., joined.

Larry Wallace, Assistant Public Defender, Fayetteville, Tennessee, for the appellant, Ronald Wayne Ashby, at trial. Robert Massey, Pulaski, Tennessee, for the appellant, Ronald Wayne Ashby, at sentencing and motion for new trial.

Paul G. Summers, Attorney General & Reporter, Jennifer L. Bledsoe, Assistant Attorney General, William Michael McCown, District Attorney General, Ann L. Filer, Assistant District Attorney, for the appellee, State of Tennessee.

### OPINION

### Introduction

The defendant, Ronald Wayne Ashby, was tried by jury in the Lincoln County Circuit Court and convicted as charged of aggravated burglary. At trial, the trial court admitted evidence regarding a crime allegedly committed by the defendant while on bond for the instant offense. After the jury verdict, the trial court sentenced the defendant as a Range I standard offender to four years and three months. That court imposed split confinement, with nine months to be served in the Lincoln County Jail, followed by five years of probation.[1] From this conviction and sentencing, the defendant now

---

[1] A trial court may impose probation equaling the statutory minimum for the class of the offense. See Tenn. Code Ann. § 40-35-303(c), Sentencing Comm'n Comments; State v. Kristina Schindler, No. 03C01-9610-CR-00376 (Tenn. Crim. App. filed Sept. 9, 1997, at Knoxville), aff'd

appeals.

## Facts

From the jury verdict of guilty, we review the facts in a light most favorable to the state. On or about June 22, 1998, at approximately 10:30 a.m., Reverend Don Russell, the victim, was in Park City Baptist Church and saw a truck in the driveway of his residence across the street. Investigating, the victim entered his home and intercepted the defendant leaving the area of the master bedroom/bathroom. The defendant asked the victim if he was a "Mr. Gulley," with whom the defendant claimed an agreement to repair bathroom sheet rock in the Gulley residence. According to the defendant, Gulley was to leave his residence unlocked for entry. The victim informed the defendant he was in the wrong house and that Mr. Gulley lived approximately two-tenths of a mile down the road. Satisfied with this explanation, the victim returned to the church. However, a subsequent investigation resulted in the arrest of the defendant charging him with aggravated burglary. The investigation revealed, as well as the evidence at trial, that no such agreement or arrangement existed between Gulley and the defendant.

By the trial date, the defendant had been indicted for a burglary in Alabama, allegedly committed under similar circumstances while on bond from the instant case. The trial court conducted a pre-trial hearing and held that evidence of this crime would be admissible for cross examination purposes regarding identity and absence of mistake. At trial, the trial court admitted the evidence after concluding that the defendant had "opened the door," during cross examination of the victim and of an investigating officer, by implying that the defendant entered the victim's residence for legitimate purposes and without intent to commit theft.

After the jury verdict of guilty, the trial court conducted a sentencing hearing that included testimony from the victim, the defendant, and the defendant's wife. The defendant was sentenced to four years and three months split confinement: seven months incarceration followed by five years of probation.

## Sufficiency of Evidence

The defendant was convicted of aggravated burglary: Entry of a residence with neither express nor constructive permission with the intent to commit, in this case, a theft. See Tenn. Code Ann. §§ 39-14-401, -402, -403. As noted, the defendant has asserted that evidence regarding his committing a similar crime was improperly admitted at trial. Although the defendant's argument is without merit, the remaining evidence nevertheless sufficiently supports conviction. We address sufficiency of evidence questions under our well-established standard of review.

When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings

and modified on other grounds, State v. Schindler, 986 S.W.2d 209 (Tenn. 1999).

-2-

by the trier of fact of guilt beyond a reasonable doubt." See Tenn. R. App. P. 13(e). This Court neither reweighs nor reevaluates the evidence, see State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978), nor substitutes its inferences for those drawn by the trier of fact from circumstantial evidence, see Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). To the contrary, this Court is required to afford the party prevailing at trial the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences that may be drawn from the evidence. See State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of facts, not this Court. Id. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), the Tennessee Supreme Court stated, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

The evidence established that the defendant opened a door and entered the Russell residence. Therefore, the crux of our inquiry addresses the intent behind that entry: Did sufficient proof support the jury's finding that, beyond a reasonable doubt, the defendant entered the Russell house to commit theft, especially when the defendant possessed no property from that house? While such possession may constitute direct proof of intent, its absence does not preclude a burglary conviction. "In fact, intent can rarely be shown by direct proof and must, necessarily, be shown by circumstantial evidence." Hall v. State, 490 S.W.2d 495, 496 (Tenn. 1973). In Hall, the defendant was apprehended in a residence but possessed none of the owner's property, and he asserted that insufficient evidence supported the conclusion that he entered the residence with the requisite intent. Id. at 495-96. The Tennessee Supreme Court rejected that assertion and upheld the conviction, recognizing:

> [a] general proposition that where one is apprehended . . . gain[ing] illegal entry into a residence . . . in which there is property which is the subject of larceny, a jury would be warranted in inferring, in the absence of an acceptable excuse, that the entry was made . . . with the intent to commit larceny.

Id. at 496. Therefore, "the intent to steal may be inferred from the breaking and entering of a building which contains things of value or from the attempt to do so." Id.; see also State v. William Paul Bogus, No. 02C01-9506-CC-00169 (Tenn. Crim. App. filed Jan. 22, 1998, at Jackson)(applied the Hall holding under the present aggravated burglary statute).

The evidence supported any rational trier of fact's concluding that the elements of the charged offense were proven beyond a reasonable doubt. Russell testified that he left his house with one door unlocked but closed. Entry through that closed door satisfied the "breaking and entering" element. See Ivey v. State, 598 S.W.2d 806 (Tenn. Crim. App. 1979). The testimony established that the defendant did not have permission to enter the Russell residence and that no one acquiesced to that entry. Finally, Russell entered the house and met the defendant exiting the master bedroom.

The defendant's excuse for his presence in the residence collapsed on subsequent inquiry. Michael Ray Gulley testified that although the defendant approached him two or three months before the burglary regarding work, he neither scheduled work with the defendant nor agreed to leave his

residence unlocked for him. The defendant's discussion with Gulley did not even involve sheetrock in a bathroom but rather a stairway. The houses are separated by approximately .2 of a mile, with separate driveways. The residences are of contrasting styles and structures: the Russell family's brick one-story ranch style residence versus Gulley's grey vinyl siding two-story Cape Cod-style structure. Further, the defendant had worked at Gulley's residence in 1992 and had spoken face-to-face with Gulley two or three months prior to the burglary. These facts adequately supported the jury's rejection of the defendant's proffered "acceptable excuse." This issue is without merit.

### Evidence of Other Crimes or Bad Acts

As previously discussed, sufficient evidence supported the verdict, even absent the 404(b) evidence. That evidence addressed intent, however, and would support the verdict against the defendant. The trial court admitted the challenged 404(b) evidence after concluding that the defendant implied that he was in the Russell house by mistake, believing that he was in a residence to perform repair work.

We review admission of 404(b) evidence by an abuse of discretion standard if "there has been substantial compliance with the procedural requirements of the Rule." See State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997). Generally, evidence of other bad acts or crimes by a defendant is prohibited because such evidence could confuse the jury or unduly prejudice the defendant. See Tenn. R. Evid. 404(b); State v. Moore, 6 S.W.3d 235, 239 (Tenn. 1999). Such evidence is admissible, however, to prove an issue, other than conduct in conformance with a character trait, that is relevant and contested at trial. See Bunch v. State, 605 S.W.2d 227, 230 (Tenn. 1980). For example, such evidence may be admissible when it logically tends to "rebut a claim or mistake or assertion of accident as a defense." See State v. McCary, 922 S.W.2d 511, 514 (Tenn. 1996). The Rule establishes the following procedure for proper admission:

(1) The court upon request must hold a hearing outside the jury's presence;
(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and
(3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b)(1)-(3). Additionally, the trial court must find by "clear and convincing" evidence that the defendant committed the other crime. See Tenn. R. Evid. 404, Advisory Comm'n Comment; State v. Parton, 694 S.W.2d 299 (Tenn. 1985).

In the instant case, the trial court held a pre-trial hearing regarding the Alabama incident. That court determined the evidence potentially relevant for purposes of cross examination on the issues of identity or absence of mistake.

During trial, the defendant's counsel asked Russell if the defendant had given him a business card. Counsel asked both Russell and the investigating officer if the defendant had any of the Russell family's possessions. On the state's request, the trial court conducted a jury-out hearing, determined that the defendant had "opened the door" regarding the issue of intent, and admitted

testimony of the alleged Alabama offense.[2]

Regarding the Alabama charge, James Moore testified that on August 21, 1998, he intercepted the defendant leaving his father's residence. He said that the defendant asked him if he was "Smith" and stated that he, the defendant, must be at the wrong address because he was scheduled to do repair work at a Smith residence in that area. Moore also said he believed that the defendant had searched the house and prepared to take certain items before Moore's arrival: Moore found open drawers and unplugged electrical devices.

John Wall, an investigator with the local sheriff's office, testified that the defendant stated that he initially approached that residence to do repair work for a Mr. Smith. Entering the residence and finding no one home, he took a bottle of pain pills and was met and held by Moore. The defendant was charged under Alabama law with third degree burglary.

Although a balancing of probative value versus unfair prejudice apparently did not occur at the jury-out hearing conducted during the trial, the trial court did address this balance at the pre-trial hearing. We conclude that the trial court sufficiently followed the required procedure. See DuBose, 953 S.W.2d at 652-53; State v. Electroplating, Inc., 990 S.W.2d 212, 223 (Tenn. Crim. App. 1998). Further, we do not find that the trial court abused its discretion by concluding that the defendant contested intent at trial. Once the issue of intent was raised, the evidence of the subsequent incident in Alabama became especially important: "little direct proof of intent increase[d] the probative value of the testimony, rather than decrease[d] it." Electroplating, Inc., 990 S.W.2d at 224. While an indictment on a pending charge does not necessarily constitute clear and convincing evidence, the uncontroverted testimony at trial sufficiently met the required standard. See id. at 223. We conclude that the trial court did not abuse its discretion in admitting the evidence. Further, any error in the admission did not "more probably than not affect[] the judgment or . . . result in prejudice to the judicial process," Tenn. R. App. P. 36(b), or "affirmatively appear to have affected the result of the trial on the merits," Tenn. R. Crim. App. 52(a). This issue is without merit.

### Sentencing

At the sentencing hearing, the trial court found two mitigating factors applicable: "the defendant's criminal conduct neither caused nor threatened serious bodily injury," Tenn. Code Ann. § 40-35-113(1); and the defendant had a drug problem. Regarding the latter factor, the record does not establish whether the trial court applied it as strong provocation for commission of a criminal offense, see Tenn. Code Ann. § 40-35-113(2), or under the "catch-all" provision, see Tenn. Code Ann. § 40-35-113(13). That court then determined that the defendant previously exhibited criminal

---

[2] Although the pre-trial hearing addressed admission of the evidence for impeachment purposes, the testimony under these circumstances constituted substantive evidence. See Laird v. State, 565 S.W.2d 38, 40 (Tenn. Crim. App. 1978).

behavior, see Tenn. Code Ann. § 40-35-114(1), and "used a special skill[3] in a manner that significantly facilitated the commission or the fulfillment of the offense," see Tenn. Code Ann. § 40-35-114(15). Assigning little weight to the mitigating factors and, under the circumstances of the similar crime committed while on bond, substantial weight to enhancement factor (1), the trial court raised the presumptive three-year minimum sentence for a Class C standard offender to four years and seven months and then lowered that sentence to four years and three months. The first nine months were to be served in a Lincoln County jail, with the subsequent five years on probation. The defendant argues that this sentence is in error because:

    (1) He is statutorily presumed eligible, and should receive, alternative sentencing;
       and
    (2) confinement exceeding that already served is inappropriate.

Our granting a presumption of correctness to the trial court's sentencing determinations is conditioned on the record affirmatively showing that the trial court considered the sentencing principles and the relevant facts and circumstances. See Tenn. Code Ann. § 40-35-401(d); State v. Poole, 945 S.W.2d 93 (Tenn. 1997); State v. Ashby, 823 S.W.2d 166 (Tenn. 1991).

After reviewing case law regarding the "special skill" enhancement factor, we do not concur with its application in the instant case. Without determining whether the defendant's vocation constituted a "special skill" as contemplated by the statute, we conclude that a stronger relationship between a skill and commission of a crime should predicate application of that factor.[4] The plain language of the statute requires a "significant relationship" between the application of the skill and the facilitation of the crime. The enhancement factor may be properly applied when a respiratory therapy technician uses his position in the medical field and relationship to medical professionals and pharmacists to fraudulently obtain codeine and hydrocodone from pharmacies. See State v. Cummings, 868 S.W.2d 661 (Tenn. Crim. App. 1992). The factor is also appropriate when an office manager and bookkeeper uses her position with an employer to embezzle funds and to cover the crime with false bookkeeping entries. See State v. Lesa Mae Malone, No. 01C01-9706-CC-00234 (Tenn. Crim. App. filed July 30, 1998, at Nashville); State v. Barbara D. Frank, No. 03C01-9209-CR-00303 (Tenn. Crim. App. filed Dec. 22, 1993, at Knoxville). In contrast, when the owner of an industrial business discharges chemicals and waste in contravention of Tennessee environmental laws, the defendant's mere possession of "specialized knowledge regarding the manufacture of chemicals" does not indicate exercise of a "skill so specialized as to facilitate the commission of acts of environmental vandalism." State v. Phillip Drew Cantwell, No. 01C01-9701-CC-00035 (Tenn. Crim. App. filed Nov. 16, 1998, at Nashville).

In the instant case, the correlation between defendant's criminal activity and his vocation was minimal: Ostensibly, his vocation involves his driving in communities without the immediate

---

[3] That skill was the defendant's trade as a home contractor.

[4] This factor may also be applied when a defendant violates a trust. See Tenn. Code Ann. § 40-35-114(15).

supervision of an employer and with an excuse should he be discovered in a residence. Such relationship does not merit application of the factor. The record indicates no further correlation between the skill and the crime. Nothing establishes that the defendant "cased" residences while working in them, and nothing indicates that he used his construction skills or tools to aid in entry. Amy Renfroe, a witness who testified at the sentencing hearing, said that the defendant rattled their doorknob and looked under the mat for a key, actions that do not involve any special skill.

However, we find no reversible error in the trial court's sentencing. A Class C standard offender, presumed a favorable candidate for probation, must prove such probation is in "the best interest of both the public and the defendant." See Tenn. Code Ann. §§ 40-35-102, -303(b); State v. Bingham, 910 S.W.2d 448, 456 (Tenn. 1995); State v. Fletcher, 805 S.W.2d 785, 787 (Tenn. Crim. App. 1991). The trial court must determine that incarceration in a given case is appropriate. First, the evidence at the hearing indicated that the defendant had committed another similar crime, under circumstances congruent with those of the instant crime, while on bond. Thus, a measure less restrictive than confinement had been recently, and unsuccessfully, applied to him. See Tenn. Code Ann. § 40-35-103(1)(C). Although pending charges are not proper bases for applying Tennessee Code Annotated § 40-35-114(1), see State v. Buckmeir, 902 S.W.2d 418, 424 (Tenn. Crim. App. 1995), a trial court may apply that factor if the underlying criminal behavior is established by a preponderance of the evidence, see State v. Carico, 968 S.W.2d 280 (Tenn. 1998). The witnesses's testimony, credited by the trial court, established that preponderance. Before invoking his right against self-incrimination at the hearing, the defendant did admit coming from the Alabama residence with pills. That defendant also admitted to engaging in illicit narcotics transactions and abuse.

The trial court further determined that the defendant was not being truthful with the court and was not taking responsibility for his actions, circumstances indicative of lowered potential for rehabilitation. See State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994).[5] This issue is without merit.

## Conclusion

The judgment and sentence from the trial court is affirmed.

---

[5] The defendant admitted at the sentencing hearing that he was found with a bottle of pills from the Alabama residence in his possession but then exercised his privilege against self-incrimination. Our accord with the trial court's finding lack of truthfulness and responsibility does not encompass the defendant's reticence on that issue.