# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs February 20, 2001

## STATE OF TENNESSEE v. EDDIE ERWIN

**Appeal from the Criminal Court for Sullivan County**
**No. S42, 172     R. Jerry Beck, Judge**

---

### No. E2000-00989-CCA-R3-CD
### April 2, 2001

---

The Defendant, Eddie Erwin, was convicted by a jury of the sale of cocaine, a Class C felony. He was sentenced as a Range III, persistent offender to twelve years incarceration. In this appeal as of right, he agues (1) that the evidence was insufficient to support the conviction; (2) that the trial court erred by convicting the Defendant based on the original indictment rather than the re-indictment; (3) that the trial court erred by failing to suppress a videotape containing statements the Defendant made while talking on a telephone in the jail; (4) that the trial court erred by admitting into evidence a photographic lineup; and (5) that the trial court erred by enhancing the Defendant's sentence based on three prior Illinois felony convictions and based on post-offense conduct. We conclude that the evidence was sufficient to support the conviction, that the Defendant was not convicted based on the wrong indictment, and that the trial court did not err by admitting the videotape and the photographic lineup into evidence; thus, we affirm the Defendant's conviction. We do, however, find that the trial court erred by sentencing the Defendant as a Range III, persistent offender, based on three prior Illinois felony convictions, because those convictions would have been misdemeanors under Tennessee law. We therefore modify the Defendant's sentence to ten years as a Range II, multiple offender. We also remand for correction of the judgment, which contains a clerical error reflecting an incorrect offense date.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Modified**

DAVID H. WELLES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and JOHN EVERETT WILLIAMS, JJ., joined.

John D. Parker, Kingsport, Tennessee, for the appellant, Eddie Erwin.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Greeley Wells, District Attorney General; and Joseph E. Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

At trial, Michael Harrell testified that on October 18, 1998, he drove his 1988 black Dodge Daytona to a house on Dale Street in Kingsport, Tennessee, to purchase $50 worth of cocaine from a man he knew as "Cabbage." He identified the Defendant in court as the person he knew as "Cabbage." He had known "Cabbage" for about eight years, and he had been to "Cabbage's" house many times. Mr. Harrell testified that he gave "Cabbage," the Defendant, $50, and the Defendant walked towards Riverview while Harrell waited in the Dale Street alley. The Defendant returned with a small bag of cocaine, which he gave to Mr. Harrell.

Mr. Harrell stated that he stopped at a nearby gas station to try some of the cocaine. He mixed about $15 worth of the cocaine with water and injected it with a syringe. Mr. Harrell sat in the parking lot for a few minutes, and then he proceeded toward his home. As he drove home, he was stopped by Officer Timothy Horne. Mr. Harrell was arrested for driving without a license, and the cocaine was found as a result of a search. Syringes were found in Mr. Harrell's car. Consequently, Mr. Harrell was also charged with possession of cocaine and drug paraphernalia.

Mr. Harrell was taken to the Kingsport City Jail, where he was advised of his Miranda rights. He agreed to make a statement. He said that he told Officer Harrell that he purchased the cocaine from "Cabbage," who was wearing blue jean shorts and a white shirt. Mr. Harrell identified "Cabbage" from a photographic lineup.

On cross-examination, Mr. Harrell testified that he had previously been convicted of forgery and theft, and he had a drug addiction problem in the past. He insisted that he was not "high" on cocaine when he made the identification of the Defendant from the photographic lineup, even though he had injected $15 worth of cocaine about an hour before. He said that the effects last only a few minutes. Mr. Harrell further testified that the criminal charges against him were still pending, and he hoped to get a lighter sentence or the charges dropped in exchange for his cooperation.

Officer Timothy Horne testified that he observed Michael Harrell operating a black Dodge Daytona around 6:00 or 6:30 p.m. on October 18, 1998. Because he knew Mr. Harrell did not have a driver's license, he stopped Mr. Harrell's vehicle and subsequently arrested him. Officer Horne searched Mr. Harrell and found a small bag containing a white substance which appeared to be cocaine. He also found syringes in Mr. Harrell's car. Officer Horne sent the white substance to the Tennessee Bureau of Investigation (TBI) crime lab for identification. At the Kingsport City Jail, Officer Horne informed Mr. Harrell of his rights and interviewed him. In his statement, Mr. Harrell said that he purchased cocaine from "Cabbage Head."

Officer Horne testified that he had been to Dale Street about thirty minutes prior to arresting Mr. Harrell, and he had seen the Defendant there, wearing blue jean shorts, a white tee shirt, and a tan cap. Officer Horne knew the Defendant, knew that the Defendant lived on Dale Street, and knew that the Defendant went by the nicknames of "Cabbage" or "Cabbage Head."

Officer Horne prepared a photographic lineup and asked Mr. Harrell to identify the person who sold him the cocaine. Mr. Harrell identified the photograph of the Defendant. Officer Horne testified that Mr. Harrell did not appear to be under the influence of cocaine when he made the identification. As a result of Mr. Harrell's identification, Officer Horne prepared an arrest warrant for the Defendant, and he arrested the Defendant two days later.

Denise Buckner testified that she is a special agent forensic scientist specializing in drug chemistry with the TBI crime lab in Knoxville. After being certified as an expert in drug identification, Ms. Buckner testified that she received a substance from Officer Horne, which she tested for the presence of cocaine. She explained that the contents of the package weighed .1 gram and tested positive for the presence of cocaine.

Officer Amanda Sykes of the Kingsport Police Department testified that she was a jailer on October 20, 1998, when the Defendant was arrested. While in the prisoner booking room, the Defendant was permitted to make a telephone call. During this telephone call, Officer Sykes was in the jail office, which is immediately adjacent to the booking area. She testified that she could see the Defendant and hear his side of the telephone conversation. She heard the Defendant say that "it could have been only one of three people." The Defendant referred to "a guy named Jeff," the "dude in the black car," and the "tall white dude in Riverview."

Officer Sykes testified that there is surveillance equipment in the booking room, which records the activities whenever a prisoner is in the room. The Defendant's telephone conversation was recorded by the surveillance cameras, which also record audio, and the videotape was played for the jury.

## SUFFICIENCY OF THE EVIDENCE

The Defendant first challenges the sufficiency of the convicting evidence. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs,

995 S.W.2d at 105.  Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment.  Tuggle, 639 S.W.2d at 914.  All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts.  See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

Looking at the evidence in the light most favorable to the State, we conclude that the evidence supports the verdict.  Michael Harrell positively identified the Defendant as the person from whom he purchased cocaine.  He identified the Defendant in a photographic lineup and in court.  The jury obviously accredited Mr. Harrell's testimony; thus, we cannot find error with the verdict.

Notwithstanding, the Defendant asserts that the evidence is insufficient because Michael Harrell's testimony was not sufficiently corroborated.  It is well settled in Tennessee that a conviction cannot be based upon the uncorroborated testimony of an accomplice.  State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); Monts v. State, 379 S.W.2d 34, 43 (Tenn. 1964).  An accomplice is "'a person who knowingly, voluntarily, and with common intent with the principal offender, unites in the commission of a crime.'"  State v. Caldwell, 977 S.W.2d 110, 115 (Tenn. Crim. App. 1997) (quoting Clapp v. State, 30 S.W. 214, 216 (Tenn. 1895)).  To corroborate the testimony of an accomplice,

> there must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity.  This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged.  It is not necessary that the corroboration extend to every part of the accomplice's evidence.  The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration.

Bigbee, 885 S.W.2d at 803 (quoting State v. Gaylor, 862 S.W.2d 546, 552 (Tenn. Crim. App. 1992)).

Because Michael Harrell purchased the cocaine from the Defendant, we agree that he was an accomplice to the offense of the sale of cocaine.  However, we do not agree that his testimony was not sufficiently corroborated.  Mr. Harrell testified that he purchased the cocaine from "Cabbage," who lived on Dale Street and was wearing blue jean shorts and a white shirt.  Officer Horne testified that thirty minutes before arresting Mr. Harrell, he saw the Defendant, whom he also knew as "Cabbage" or "Cabbage Head," on Dale Street wearing blue jean shorts and a white tee shirt.  Moreover, after the Defendant was arrested, he told someone on the telephone that "it could have

been only one of three people." One of those three people was the "dude in the black car." Mr. Harrell testified that he drove his black Dodge Daytona to Dale Street when he went to purchase cocaine from the Defendant, and Officer Horne testified that Mr. Harrell was driving a black Dodge Daytona when he arrested Mr. Harrell. While this independent circumstantial evidence, standing alone, would not be sufficient to support a conviction, it is sufficient to implicate the Defendant in the crime and thus corroborate Mr. Harrell's testimony.

The Defendant also asserts, "Most noteworthy with regard to the insufficiency of the proof in this case is that it does not support conviction of the crime of selling cocaine on October 8, 1998, the date reflected on the Judgment as the date of the offense." The proof established that the offense occurred on October 18, 1998, rather than October 8, 1998, as reflected on the judgment. The indictment upon which the Defendant was tried alleged that the offense occurred on October 18, 1998. It thus appears that there is an error on the judgment, not an error with the proof. Furthermore, the date the crime was committed is not an element of the offense, thus it would have no bearing on the sufficiency of the evidence. See Tenn. Code Ann. § 39-17-417. This issue has no merit.

INDICTMENT ISSUE

The Defendant contends that he was erroneously convicted based on the wrong indictment. However, all objections based on defects in the indictment must be raised pretrial. See Tenn. R. Crim. P. 12(b). Moreover, the Defendant failed to make appropriate references to the record, citations to authority, or argument in support of his position. Thus, he has waived this issue. See Tenn. Ct. Crim. App. R. 10(b).

Additionally, we can find no evidence in the record to support the Defendant's contention. It appears from the record that when the Defendant was originally indicted, the indictment stated that the offense occurred on October 8, 1998. Because this date was erroneous, the Defendant was re-indicted for the same offense, and the second indictment stated that the offense occurred on October 18, 1998. During pre-trial discussions between the parties and the trial court, the Defendant stated that he had no objection to the new indictment, that he knew he was going to be re-indicted because of the erroneous date on the first indictment, and that the new indictment would not affect his case. This re-indictment, which essentially reflected an amendment to the original indictment, occurred before jeopardy attached and did not prejudice the rights of the Defendant, thus the change was proper. See Tenn. R. Crim. P. 7(b). The parties then proceeded to trial based on the second indictment, which alleged an offense date of October 18, 1998. All of the evidence indicated that the offense occurred on October 18, 1998, and there is no indication that the jury was instructed on the first indictment, which alleged an offense date of October 8, 1998. However, the judgment does reflect an offense date of October 8, 1998. It thus appears that there is a clerical error on the judgment, not an error with the indictment. Accordingly, we remand the case for correction of the judgment to reflect the true offense date of October 18, 1998. See Tenn. R. Crim. P. 36.

## ADMISSION OF VIDEOTAPE

The Defendant next argues that the trial court erred by failing to suppress the videotape of his side of a telephone conversation which took place in the booking room of the jail. He asserts that the videotape should have been suppressed because he had a legitimate expectation of privacy and because the communication was a privileged communication with his wife. During the suppression hearing, the Defendant relied primarily on his argument that the marital privilege prevented the admission of the evidence, but he also stated that the Fourth Amendment was implicated. The trial court found that the marital privilege did not apply because the conversation took place in the presence of a third party. While the trial court did not explicitly state that the Defendant did not have a legitimate expectation of privacy while talking on the phone, it noted that a sign beside the phone indicated that phone conversations are monitored, and it also stated that surveillance is common in jails in this state. We agree with the findings of the trial court and conclude that the videotape was properly admitted.

> When reviewing the grant or denial of a motion to suppress,
> [q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.

State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

While the Fourth Amendment to the United States Constitution protects persons from unreasonable searches and seizures in places in which they have a reasonable expectation of privacy, see Katz v. United States, 389 U.S. 347, 351 (1967) (Harlan, J. concurring), this Court has held that a person does not have a reasonable expectation of privacy on a jail-house telephone. See State v. Hutchison, No. 1028, 1987 WL 14331, at *5-6 (Tenn. Crim. App., Knoxville, July 23, 1987); see also State v. Rudolph Munn, No. 01C01-9801-CC-00007, 1999 WL 177341, at *12 (Tenn. Crim. App., Nashville, Apr. 1, 1999), perm. app. granted (Tenn. Nov. 9, 1999). As stated by the Supreme Court, "[I]t is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room." Lanza v. New York, 370 U.S. 139, 143 (1962). Moreover, the trial court specifically accredited the testimony of Officer Amanda Sykes during the suppression hearing that a sign was posted beside the telephone indicating that phone calls would be monitored. The phone calls were monitored by video cameras in the booking room which had microphones to record sound. The video cameras were in plain view in the booking room. Accordingly, we hold that the Defendant had no reasonable expectation of privacy of his telephone conversation in the booking room of the jail; thus, the Fourth Amendment does not require its suppression.

At the time of the Defendant's trial, the marital privilege provided that "in either a civil or criminal proceeding, confidential communications between married persons are privileged and inadmissible if either spouse objects."[1] Tenn. Code Ann. § 24-1-201(b) (1999) (amended 2000). Both the Defendant and his wife testified at the suppression hearing; both stated that the telephone conversation was a conversation between husband and wife; both stated that they believed the conversation was confidential; and both objected to its use. However, it is well-established that statements made in the presence of third parties are not confidential. See Hazlett v. Bryant, 241 S.W.2d 121, 123 (Tenn. 1951); Adams v. State, 563 S.W.2d 804, 808 (Tenn. Crim. App. 1978); Burton v. State, 501 S.W.2d 814, 817-19 (Tenn. Crim. App. 1973). The trial court determined in this case that the Defendant's side of the conversation was not confidential because it occurred in the presence of a third party, and the evidence does not preponderate against this finding. Officer Sykes testified that she was in the jail office adjacent to the booking room, and she could see the Defendant and hear his side of the conversation. The Defendant testified that he was aware of her presence when he was talking on the telephone. Moreover, we have already determined that the Defendant did not have a reasonable expectation of privacy regarding his telephone conversation. Thus, we find no error with the trial court's determination that the marital privilege did not apply.

## ADMISSION OF PHOTOGRAPHIC LINEUP

The Defendant argues that the trial court erred by admitting into evidence the photographic lineup in which Mr. Harrell identified the Defendant as the person who sold him the cocaine. He asserts that the lineup was suggestive and created a substantial likelihood of irreparable misidentification. However, the Defendant has raised this issue for the first time on appeal. He did not object to the introduction of the lineup at trial, and he did not raise the issue in his motion for a new trial. Therefore, this issue has been waived. See Tenn. R. App. P. 3(e), 36(a); State v. Killebrew, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988).

Nevertheless, we also conclude that the Defendant's contentions have no merit. Mr. Harrell testified that he had known the Defendant for eight years, and he had been to the Defendant's house on many occasions. He was shown a lineup containing pictures of six black males, and he readily picked the picture of the Defendant. While two of the pictures may have had a somewhat darker background than the others, we cannot agree with the Defendant that those dark pictures forced Mr. Harrell to pick the Defendant's picture, which was light and clear. What forced Mr. Harrell to pick the Defendant's picture was that he had known the Defendant for years. The Defendant's identity was never in doubt. Thus, this issue has no merit.

## SENTENCING

Finally, the Defendant challenges the sentence imposed on him by the trial court. He asserts that the trial court erred by enhancing his sentence due to pending criminal charges which arose out of an incident occurring on December 25, 1999, after the charge and conviction in this case. He also asserts that the trial court erred by enhancing his sentence due to three prior Illinois convictions for retail theft, which would not have been felonies under the law in Tennessee. We agree.

---

[1]The marital privilege statute has since been amended. See Tenn. Code Ann. § 24-1-201(2000).

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988); Tenn. Code Ann. §§ 40-35-102, -103, -210.

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

At the conclusion of the sentencing hearing, the trial court must first determine the appropriate range of sentence. Tenn. Code Ann. § 40-35-210(a). In this case, the trial court determined that the Defendant was a Range III, persistent offender. A persistent offender is one who has received "[a]ny combination of five (5) or more prior felony convictions within the conviction class or higher, or within the next two (2) lower felony classes, where applicable." Id. § 40-35-107(a)(1). Because the Defendant was convicted of a Class C felony, any prior felony conviction could be used to satisfy the prior felony requirement. See id. A prior conviction includes a conviction under the laws of any other state, which, if committed in Tennessee, would have constituted an offense under the laws of Tennessee. Id. § 40-35-107(b)(5). "In the event that a felony from a jurisdiction other than Tennessee is not a named felony in this state, the elements of the offense shall be used by the Tennessee court to determine what classification the offense is given." Id.

In determining that the Defendant was a persistent offender, the trial court relied upon three prior Tennessee felony convictions and three prior Illinois felony convictions. Although the Defendant appeared to agree with the trial court at the sentencing hearing that the prior Illinois felony convictions were equivalent to Class E felonies in Tennessee, he argues on appeal that the prior Illinois convictions would have been Class A misdemeanors under Tennessee law.

The three Illinois felony convictions were all convictions for "retail theft with a prior theft conviction." Under the applicable Illinois law, the offense of retail theft occurs when a person knowingly "[t]akes possession of, carries away, [or] transfers . . . any merchandise displayed, held, stored or offered for sale in a retail mercantile establishment with the intention of retaining such merchandise or with the intention of depriving the merchant permanently of the possession, use or benefit of such merchandise without paying the full retail value of such merchandise." 2 Ill. Comp. Stat. Ann. 38/16A-3(a) (1987). If the value is under $150, the offense is a Class A misdemeanor. Id. 16A-10(1). However, if the value is under $150 and the defendant has previously been convicted of any type of theft, the offense is a Class 4 felony. Id. 16A-10(2). The Defendant's three convictions were Class 4 felonies under Illinois law because he was convicted of retail theft of property valued under $150, and he had previously been convicted of theft.

Tennessee does not have a separate retail theft statute, so the elements of the Defendant's Illinois convictions would fall under our general theft statute, which provides, "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103. If the theft is of property valued at under $500, the offense is a Class A misdemeanor. Id. § 39-14-105(1). The offense is not elevated to a felony if the defendant has a prior theft conviction; rather, the offense is raised to a felony only when the value of the property obtained is over $500. Id. § 39-14-105(2). Thus, because the elements of the offense of retail theft with a prior conviction would not constitute a felony offense under Tennessee law, the trial court erred by applying the three prior Illinois felony convictions to determine the Defendant's sentence range. See id. § 40-35-107(b)(5). Accordingly, relying upon the Defendant's three prior Tennessee felony convictions, we find that the Defendant should have been sentenced as a Range II, multiple offender. See id. § 40-35-106(a)(1) (requiring a minimum of two prior felony convictions for classification as a multiple offender).

The Defendant also argues that the trial court erred by considering pending criminal charges for conduct which occurred after this conviction as evidence of criminal behavior for enhancement purposes. During the sentencing hearing, the State offered a police officer as a witness, and he testified that on December 25, 1999, he encountered the Defendant, who was in possession of a white substance believed to be cocaine. The Defendant was subsequently arrested for possession of cocaine for resale, driving under the influence, violation of implied consent, possession of drug paraphernalia, resisting arrest, and assault. It is not clear from the record whether the trial court considered this testimony as evidence of criminal behavior; the trial court had already stated on the record, before it heard this testimony, that enhancement factor number one, that the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, would apply. See id. § 40-35-114(1). However, we note that this Court has found it improper to consider pending criminal charges as evidence of criminal behavior for enhancement purposes, because, until conviction, a defendant is entitled to a presumption of innocence. State v. Buckmeir, 902 S.W.2d 418, 424 (Tenn. Crim. App. 1995). Thus, if the trial court considered this testimony, it was error.

Having found that the trial court improperly sentenced the Defendant as a Range III, persistent offender, we must now determine the proper sentence under the appropriate range. Because the Defendant has at least two prior felony convictions, he qualifies as a Range II, multiple offender. See Tenn. Code Ann. § 40-35-106(a)(1). The sentence range for a Class C felony for a Range II offender is six to ten years. Id. § 40-35-112(b)(3). When setting the length of a sentence, the court must start with the presumptive sentence, which is the minimum sentence in the range for a Class C felony. Id. § 40-35-210(c). The court must then enhance the sentence within the range as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors. Id. § 40-35-210(e).

In sentencing the Defendant, the trial court found two enhancement factors: (1) that the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, and (2) that the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. See id. § 40-35-114(1), (8). It also found one mitigating factor: that the Defendant came forward and confessed to a crime with which another man had been charged. See id. § 40-35-113(13). These enhancement factors and mitigating factor are not challenged by either party, and we find that they are supported by the record. In addition to the two felony convictions used to establish the Defendant's range, he has one prior Tennessee felony conviction, three Illinois felony convictions which would have been misdemeanors in Tennessee, and at least fifteen misdemeanor convictions in Tennessee. On two occasions, the Defendant's parole was revoked, indicating his unwillingness to comply with the conditions of a sentence involving release in the community. While we do believe that the Defendant's actions in accepting responsibility for a crime with which another man was charged weigh in his favor, we believe that his prior criminal activity and unwillingness to abide by the conditions of release in the community greatly outweigh this mitigating factor. Therefore, we conclude that the appropriate sentence for the Defendant is ten years, as a Range II, multiple offender.

## CONCLUSION

Having found no error with the sufficiency of the evidence or the admission of evidence, we affirm the Defendant's conviction for the sale of cocaine, a schedule II controlled substance. We modify the Defendant's sentence to ten years incarceration, the maximum sentence in the range for a Range II, multiple offender. We remand for entry of an order reflecting the modified sentence, and we also remand the case for correction of the judgment to reflect the correct offense date of October 18, 1998.

_____
DAVID H. WELLES, JUDGE