
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 6, 2016

## STATE OF TENNESSEE v. DAVID TROY FIRESTONE

**Appeal from the Circuit Court for Madison County**
**No. 15-473   Donald H. Allen, Judge**

_____

## No. W2016-00347-CCA-R3-CD

_____

David Troy Firestone ("the Defendant") pled guilty to burglary and theft of property.  At a bench trial, the trial court found that the value of the stolen property was over $10,000. The trial court sentenced the Defendant to concurrent sentences of four years for the burglary conviction and to five years for the theft of property conviction as a Range I standard offender.  On appeal, the Defendant argues that the evidence was insufficient to establish that the value of the stolen property exceeded $10,000, that he was improperly sentenced, and that the trial court erred in ordering the Defendant to pay $5,000 in restitution to Storage Town of America.  After a thorough review of the record and case law, we affirm the Defendant's convictions and sentences but reverse and vacate the trial court's order of restitution to Storage Town of America.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part and Reversed in Part**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Gregory D. Gookin, Jackson, Tennessee, for the appellant, David Troy Firestone.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Jerry Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I. Factual and Procedural Background

*Guilty Plea Proceeding*

On December 21, 2015, the Defendant pled guilty pursuant to a plea agreement to burglary and theft of property. Under the plea agreement, the value of the stolen property relating to the theft charge would be determined at a bench trial, the Defendant's sentences would run concurrently, and the State would not seek a fine.

The State offered the following recitation of facts supporting the Defendant's guilty plea:

> Your Honor, April 30th, 2015, [the Defendant] did unlawfully enter a building being Storage Town of America without the effective consent of the owner with the intent to commit theft of property and on that same day he did knowingly obtain or exercise control over property. The State contends it was equal to or over the value of $10,000 and [the Defendant] admits at least $1[,]000 without the effective consent of the owner being Alma Cole with intent to deprive the owner of the property.

> Ms. Cole went to her storage unit at Storage Town of America on Wiley Parker which was No. 88[] [and] noticed it had been burglarized. They suspected the person next door in No. 87. [Ms. Cole] [f]ound that [the Defendant] had gained entry through the wall and had stolen the items. [The Defendant] did admit to doing that at least $1[,]000 worth of property. All of that was without the consent of Storage Town of America as well as Ms. Cole. . . . [The Defendant] did admit he took screws out of the metal wall between the two storage units to gain entry into her unit. Some empty boxes of things that were in her unit were found in his unit next door when they went and looked inside of his unit because he was delinquent on that unit. The owner went and looked inside and it all occurred in Madison County, Tennessee.

*Bench Trial*

At the bench trial, Ms. Alma Cole testified that she rented a storage unit at Storage Town of America in April 2015. Ms. Cole stated that she stored "[a]ll [her] clothes, gym shoes, Under Armo[u]r gym shoes, Nike Air Max, [and] leather jackets[]" in her storage unit. Ms. Cole stated that she "pretty much lived in and out of the storage [unit]." Ms.

Cole testified that in May 2015 she visited her storage unit and realized someone had broken into her unit and stolen items. Ms. Cole stated that the Defendant "had [taken] the screws out of a unit next to [hers] that was empty" to gain access to her unit. Ms. Cole reported the theft to Storage Town of America as well as the police. Ms. Cole testified that the Defendant stole a white basket, a black box with jewelry, Under Armour shoes, Nike Air Max shoes, Michael Kors shoes, clothing, leather belts and key chains, and personal items such as a photograph album and letters. Ms. Cole stated that the Defendant also stole a bag of receipts for items that were stored in the unit. Ms. Cole also testified that the only items in her unit that were not stolen were her Nine West shoes. Ms. Cole was unable to produce receipts for many of the gym shoes because she kept the receipts for the shoes in the shoe boxes, which were also stolen. Ms. Cole paid $200 and $160 to replace two of the pairs of stolen gym shoes. She estimated that the Defendant took between 110 and 115 pairs of gym shoes and fourteen pairs of boots. Ms. Cole testified that the gym shoes cost approximately $180-$200 a pair when she purchased them, and she stated that the boots were valued between fifty and sixty dollars a pair. Ms. Cole testified that two leather jackets were stolen and estimated their value to be $500 for both. Ms. Cole also stated that a Nine West orange pantsuit valued at $140 was stolen, along with several swimsuits valued at a total of $200. Ms. Cole testified that the value of all of the items taken by the Defendant was between $12,000 and $13,000. Ms. Cole stated that Storage Town of America gave her $5,000 to cover the loss of her property from the storage unit, but she had not been compensated for $5,000-$6,000 of property.

On cross-examination, Ms. Cole testified that her contract with Storage Town of America stated that Storage Town of America would only reimburse customers whose property was stolen up to $5,000 because it assumed that individuals would not store more than $5,000 of property in a unit. Ms. Cole agreed that her contract with Storage Town of America stated that "the occupant agrees not to store irreplaceable property or property having special or sentimental value and specifically waives the right to make claims for special or emotional value to a stored property[.]" Ms. Cole agreed that she told the police on May 13, 2015, that only forty pairs of Nike Air Max shoes had been stolen based on a previous estimate of the number of shoes in her unit, but she stated that she knew that she had more than forty pairs of gym shoes in her storage unit before the theft. Ms. Cole agreed that, in her victim impact statement, she stated that 140 pairs of gym shoes were stolen. Ms. Cole explained that she kept her property in her storage unit because she moved in with her sister after her sister had suffered a stroke, and she was renting her house to other people.

The Defendant testified that he rented an empty storage unit next to Ms. Cole's unit on the same day as the theft. After he stole the property, the Defendant took the items to Memphis and sold them to a consignment store for $185, which he split with

another individual who assisted with the burglary and theft.[1]  The Defendant testified that he stole approximately twenty pairs of gym shoes, two or three pairs of boots, two leather jackets, and a basket with fragrances and bath products from Ms. Cole's storage unit. The Defendant stated that because he "had a bunch of stuff in the back of the truck," he "couldn't fit much" else in the truck.  The Defendant agreed that the value of the stolen property exceeded $1,000 and estimated the total value of the stolen property to be $5,000-$6,000.  The Defendant testified that he did not steal personal items such as photographs, letters, or a bag of receipts.  On cross-examination, the Defendant stated that he was under the influence of methamphetamine during the burglary and theft.  The Defendant testified that he used his share of the money earned from the theft to purchase insulin, gas, food, and drugs.  The Defendant also apologized to Ms. Cole for the theft. The trial court credited Ms. Cole's testimony regarding the number of pairs of shoes that were stolen and the approximate total value of the stolen property.  The trial court found that the value of the stolen property was greater than $10,000 and determined that the Defendant was guilty of theft of property over $10,000, a Class C felony.

*Sentencing Hearing*

At a subsequent sentencing hearing, the trial court stated that it had considered the evidence presented at the guilty plea, the evidence and testimony presented at the bench trial, and the presentence report.  The trial court also stated that it had considered "the nature and characteristics of the criminal conduct involved."  The trial court found that the Defendant was a Range I standard offender.  As to enhancement factors, the trial court found that the Defendant had "a previous history of criminal convictions or criminal behavior in addition to that necessary to establish the appropriate range[]" and gave "great weight" to that factor.  The trial court noted that the Defendant was charged with "a weapons offense" in Galveston County, Texas, in 1998 and that the Defendant had active arrest warrants from Copiah County, Mississippi for "'taking possession of or taking away a vehicle'" and for grand larceny, at the time of the sentencing hearing.  The trial court also noted that the Defendant had an outstanding bench warrant from Hines County, Mississippi for burglary of a storage unit and that the Defendant had been arrested in Louisiana as a "fugitive from justice."  The trial court noted that the Defendant had "absolutely no ties to Jackson, Madison County, Tennessee[,] other than the fact that he came here at some point and rented a storage unit at Storage Town of America[]" and used that storage unit to break into Ms. Cole's unit.  The trial court also noted that the Defendant admitted in the presentence report to using methamphetamine "on an almost daily basis for almost 21 years . . . ."  The trial court found that the

---

[1] The Defendant's accomplice is not identified in the record, and there is no evidence that this person was also charged.

- 4 -

Defendant "was a leader in the commission of an offense involving two or more criminal actors[]" and gave this factor "moderate weight."

Regarding mitigating factors, the trial court found that "the [D]efendant's conduct neither caused nor threatened serious bodily injury[]" and that the Defendant had pled guilty and "accepted responsibility for his actions" and gave these factors slight weight for mitigation purposes. The trial court noted that the Defendant's work history was "very sporadic." The trial court sentenced the Defendant to four years for burglary and to five years for theft of property over the value of $10,000. The trial court noted that under the plea agreement, the two sentences would be served concurrently.

The trial court stated that it had considered "the facts and circumstances surrounding these offenses, . . . the nature and circumstances of the [D]efendant's criminal conduct," and the Defendant's criminal record and history of criminal behavior and found that the Defendant was not a good candidate for probation. The trial court also considered the Defendant's lack of employment, his active arrest warrants in Mississippi, and his arrest in Louisiana as a "fugitive from justice." The trial court noted that because the Defendant had fled from Mississippi to Louisiana and because the Defendant had no ties to Tennessee, the Defendant might not stay in Tennessee to abide by the conditions of probation. The trial court found that the Defendant "lack[ed] the potential for rehabilitation especially when you consider his long history of methamphetamine drug abuse for which he's never received treatment." The trial court also found that "any probation would certainly undo the seriousness of these offenses especially in light of the fact that . . . [the Defendant] basically came to Jackson and rented the storage unit for the purpose of breaking into other storage units . . . ." The trial court ordered the Defendant to serve his sentences in confinement and ordered that the Defendant "be recommended to be considered for the methamphetamine treatment program in the Tennessee Department of Correction[]."

The trial court ordered the Defendant to pay $7,000 to Ms. Cole and $5,000 to Storage Town of America in restitution. The trial court stated that "[j]ust because Storage Town paid [Ms. Cole] for some portion of her loss does not mean that they are not also a victim because they are a victim. They have had to lose $5[,]000 to pay her . . . ." The trial court noted that Storage Town of America was self-insured because the same individual owned both Storage Town of America and its insurer, RBH, Inc. This timely appeal followed.

- 5 -

## II. Analysis

*Sufficiency of the Evidence*

On appeal, the Defendant argues that "[t]he trial court erred in finding the value of the stolen property to be greater than $10,000[]" because the evidence was insufficient for a rational fact-finder to find that the stolen property was valued at $12,000. The State contends that the trial court found Ms. Cole's testimony credible as to the value of the stolen property and that there was sufficient evidence for the trial court to determine that the property's value was over $10,000.

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence "are resolved by the trier of fact." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. Id. Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. Bland, 958 S.W.2d at 659; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. Bland, 958 S.W.2d at 659; Tuggle, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." State v. Vasques, 221 S.W.3d 514, 521 (Tenn. 2007).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code. Ann. § 38-14-103 (a) (2015). Theft of property is "[a] Class C felony if the value of the property . . . obtained is ten thousand dollars ($10,000) or more but less than sixty thousand dollars ($60,000)[.]" Tenn. Code. Ann. § 39-14-105(a)(4) (2015). "Value" is defined as "[t]he fair market value of the property or service at the time and place of the offense[]" or "[i]f the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense[.]" Tenn. Code Ann. § 39-11-106(a)(36)(A)(i)-(ii) (2015).

- 6 -

The Defendant argues that the evidence was insufficient for a rational trier of fact to determine that Ms. Cole had lost $12,000 of property because Ms. Cole initially reported a loss of forty pairs of gym shoes to the police but testified at the bench trial that 110 pairs of gym shoes had been stolen. The Defendant argues that he stole "no more than twenty (20) pairs of shoes" and that he could not have stolen 110 pairs "because his truck did not have adequate space to do so." When the evidence is viewed in the light most favorable to the State, there is sufficient evidence for the trial court to have determined that the fair market value of the stolen property exceeded $10,000. The victim, Ms. Cole, testified that the Defendant stole a white basket, a black box with jewelry, Under Armour shoes, Nike Air Max shoes, Michael Kors shoes, clothing, leather belts and key chains, and personal items such as a photograph album and letters. Ms. Cole estimated that 110-115 pairs of gym shoes with a replacement value between $100-$200 and fourteen pairs of boots valued at fifty to sixty dollars each were stolen. Ms. Cole testified that two leather jackets valued at $500 for both, a Nine West orange pantsuit valued at $140, and several swimsuits valued at $200 total were also stolen. Ms. Cole testified that the value of all of the items that were stolen was between $12,000 and $13,000. When Ms. Cole reported the robbery to the police, she informed the police that the total value of the stolen items was $12,524, as reflected in the presentence report. Ms. Cole agreed that she submitted a list to the police department stating that forty pairs of shoes had been stolen. However, Ms. Cole explained that "[i]t's always been at least 100 to 115 pairs of gym shoes that [were] in the storage. It was more than [forty]." As the trier of fact, it was within the purview of the trial court to resolve any conflicts between Ms. Cole's testimony and the Defendant's and to accredit Ms. Cole's testimony regarding the number of items that were stolen from her storage unit and the total value of the stolen items. The trial court had sufficient evidence from Ms. Cole's testimony to determine that the fair market value of the stolen property exceeded $10,000. See State v. Steven Dale Hill, No. M2012-00982-CCA-R3-CD, 2013 WL 1092724, at *8 (Tenn. Crim. App. Mar. 15, 2013) (holding that the testimony of the property owner as to the value of the stolen property was sufficient to establish that the defendant was guilty of theft of property). The Defendant is not entitled to relief on this ground.

*Sentencing*

Improper Application of Enhancement and Mitigating Factors

The Defendant argues that the trial court improperly relied on the Defendant's pending charges and self-reported illegal drug use when it found that the Defendant had a previous history of criminal convictions or behavior. The Defendant also asserts that the trial court improperly found that he was a leader in the commission of the theft at issue. The State responds that this court has previously recognized that a trial court may rely on evidence of criminal behavior as an enhancement factor, that this court has also upheld a

trial court's reliance on self-reporting of illegal activity to enhance a sentence, and that the trial court properly found the Defendant was a leader in the burglary and theft crimes even if "he and his unnamed accomplice were equal partners."

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2015); State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c) (2015).

Although the trial court should consider enhancement and mitigating factors, such factors are advisory only. See Tenn. Code Ann. § 40-35-114 (2015); see also Bise, 380 S.W.3d at 699 n. 33, 704; State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343. A trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Bise, 380 S.W.3d at 706. When the record clearly establishes that the trial court imposed a sentence within the appropriate range after a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. Id. at 707. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2015), Sentencing Comm'n Cmts.

Here, the trial court found that the Defendant was a Range I, standard offender for the burglary and theft of property over the value of $10,000 convictions. A sentence for a standard offender is within Range I. Tenn. Code Ann. § 40-35-105(b) (2015). Burglary

is a Class D felony; the Range I sentence for a Class D felony is two to four years. Tenn. Code Ann. § 39-14-402(c) (2015); § 40-35-112(a)(4) (2015). Theft of property over the value of $10,000 is a Class C felony and the Range I sentence for a Class C felony is three to six years. Tenn. Code Ann. § 39-14-105(a)(4) (2015); § 40-35-112(a)(3) (2015). The trial court ordered the Defendant to serve four years for his Class D burglary conviction and to serve five years for his Class C theft of property conviction. Because the trial court ordered the Defendant to serve sentences within the proper range, the sentences are presumptively reasonable and we will not reverse the trial court's decision absent an abuse of discretion. See Bise, 380 S.W.3d at 707.

### "Criminal Behavior" Enhancement Factor

The trial court found that the Defendant had a "previous history of criminal convictions or criminal behavior." See Tenn. Code Ann. § 40-35-114(1). The trial court relied on evidence in the presentence report that the Defendant had previously been convicted of a weapons offense, had two active arrest warrants and an outstanding bench warrant from Mississippi at the time of the sentencing hearing, and had previously been arrested as a "fugitive from justice." The trial court also noted that the Defendant had admitted to using methamphetamine daily for over twenty years.

The Defendant relies on the dissenting opinion in State v. Paul Neil Laurent, No. M2005-00289-CCA-R3-CD, 2006 WL 468700, at *14 (Tenn. Crim. App. Feb. 27, 2006) (Hayes, J., dissenting), perm. app. denied (Tenn. Aug. 21, 2006), to argue that the trial court erred in relying on the Defendant's admission in the presentence report that he used methamphetamine for almost twenty years to find that the Defendant had a history of criminal behavior. However, the facts of Paul Neil Laurent can be distinguished from the facts in the current case in several ways. First, in Paul Neil Laurent, the trial court and the majority opinion considered the defendant's admitted drug use in the context of whether consecutive sentencing was appropriate and not as an enhancement factor. Id. at *12-13. Here, the trial court considered these facts in its application of enhancement factors, not whether or not to order consecutive sentence alignment. Second, the dissenting opinion departed from the majority regarding the affirmation of consecutive sentencing based on the defendant's admitted drug use because the defendant had no prior convictions. Id. at 14. Here, the trial court relied in part on the Defendant's prior conviction to find that he had a prior history of criminal behavior, in addition to the Defendant's admitted drug use. We decline to apply the reasoning of the dissenting opinion in Paul Neil Laurent to this case.

The Defendant also urges this court to apply the holding in State v. Buckmeir, 902 S.W.2d 418 (Tenn. Crim. App. 1995), to this case. In Buckmeir, this court held that the trial court erred in relying on the defendant's pending charges as evidence of criminal

behavior for enhancement purposes because "[t]he defendant has not been convicted on any of these pending charges, and is presumed innocent until convicted." Id. at 424 (citing State v. Miller, 674 S.W.2d 279, 284 (Tenn. 1984)). However, this court distinguished the holding of Buckmeir in State v. Ward, 138 S.W.3d 245, 282 (Tenn. Crim. App. 2003). In that case, our court recognized that "a trial judge may find evidence of criminal *behavior* even though there has been no conviction." Id. (citing State v. Massey, 757 S.W.2d 350, 352 (Tenn. Crim. App. 1988)) (emphasis in original). "There is no *per se* rule in Tennessee against considering unadjudicated conduct. The trial court is merely prohibited from *relying* upon a mere arrest record to enhance a defendant's sentence." State v. Robinson, 971 S.W.2d 30, 46 (Tenn. Crim. App. 1997) (citing State v. Newsome, 798 S.W.2d 542, 543 (Tenn. Crim. App. 1990)) (emphasis in original).

Here, the trial court found that the Defendant had a history of criminal behavior based on his prior conviction, several outstanding arrest and bench warrants, and his admitted daily usage of methamphetamine. Even if the trial court improperly relied on the Defendant's outstanding arrest and bench warrants to find that the Defendant had a history of criminal behavior, the trial court still properly considered the Defendant's prior conviction and the Defendant's admission that he used methamphetamine daily for over twenty years to find that the Defendant had a history of criminal behavior. See State v. Keel, 882 S.W.2d 410, 419 (Tenn. Crim. App. 1994), distinguished on other grounds by State v. Kelley, 34 S.W.3d 471, 483 (Tenn. Crim. App. 2000). The Defendant is not entitled to relief on this ground.

**"Leader" Enhancement Factor**

The trial court also found that the Defendant "was a leader in the commission of an offense involving two (2) or more criminal actors[.]" See Tenn. Code Ann. § 40-35-114(2). Without citing to authority, the Defendant contends that the trial court erred in finding this enhancement factor applied to the Defendant because the Defendant "rented the storage unit in his name but testified that he and his accomplice equally participated in the burglary of and theft from Ms. Cole's unit." The State responds that the "Defendant can still be considered a leader in the commission of these crimes even if he and his unnamed accomplice were equal partners." It is well-established that Tennessee Code Annotated section 40-35-114(2) does not require a defendant to be "the sole leader but rather that he be 'a leader[.]'" State v. Freeman, 943 S.W.2d 25, 30-31 (Tenn. Crim. App. 1996) (citing State v. Hicks, 868 S.W.2d 729, 731 (Tenn. Crim. App. 1993)); see also State v. Madden, 99 S.W.3d 127, 139 (Tenn. Crim. App. 2002). The Defendant admitted that he rented a storage unit at Storage Town of America under his name and that he and his accomplice entered Ms. Cole's storage unit through the shared wall between her unit and the unit he rented. Under these facts, the trial court properly

- 10 -

considered that the Defendant was a leader in the burglary of Ms. Cole's storage unit and theft of her property as an enhancement factor. The Defendant is not entitled to relief on this ground.

<u>Denial of Alternative Sentence</u>

The Defendant argues that the trial court improperly denied full probation because the Defendant does not have a "long history of criminal conduct[,]" the Defendant "had previously proven that he could comply with the conditions of alternative sentencing[,]" and the Defendant expressed remorse for the current crime. The State responds that the trial court did not err in denying the Defendant probation.

The abuse of discretion with a presumption of reasonableness standard of review set by our supreme court in <u>Bise</u> also applies to a trial court's decision to grant or deny probation. <u>State v. Caudle</u>, 388 S.W.3d 273, 278-79 (Tenn. 2012) (citing <u>Bise</u>, 380 S.W. 3d at 708). Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. <u>Carter</u>, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" Tenn. Code Ann. § 40-35-102(6)(A) (2015).

Tennessee Code Annotated section 40-35-303 states that:

[a] defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less; however, no defendant shall be eligible for probation under this chapter if convicted of a violation of § 39-13-304, § 39-13-402, § 39-13-504, § 39-13-532, § 39-15-402, § 39-17-417(b) or (i), § 39-17-1003, § 39-17-1004 or § 39-17-1005. A defendant shall also be eligible for probation pursuant to § 40-36-106(e)(3).

Tenn. Code Ann. § 40-35-303(a) (2015). A defendant has the burden of establishing that he is suitable for probation and demonstrating that probation will "subserve the ends of justice and the best interest of both the public and the defendant." <u>Carter</u>, 254 S.W.3d at 347 (quoting <u>State v. Housewright</u>, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). When determining whether probation is appropriate, the trial court must consider "the circumstances of the offense, the applicant's social history, criminal record, present condition, including mental and physical condition, and the deterrent effect upon other criminal activity." <u>State v. Wiseman</u>, 643 S.W.2d 354, 374 (Tenn. Crim. App. 1982).

- 11 -

Under Tennessee Code Annotated section 40-35-103, the trial court should look to the following considerations to determine whether a sentence of confinement is appropriate:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1) (2015).

Here, the trial court denied probation because it found that the Defendant "lack[ed] the potential for rehabilitation especially when you consider his long history of methamphetamine drug abuse for which he's never received treatment." The trial court also found that probation would depreciate the seriousness of the offenses "especially in light of the fact that . . . [the Defendant] basically came to Jackson and rented the storage unit for the purpose of breaking into other storage units . . . ." The trial court also considered the Defendant's lack of employment, his active arrest and bench warrants in Mississippi, and his arrest in Louisiana as a "fugitive from justice." The trial court noted that because the Defendant had fled from Mississippi to Louisiana, and because the Defendant had no ties to Tennessee, the Defendant might not stay in Tennessee to abide by the conditions of probation. Because the trial court found that probation would depreciate the seriousness of the burglary of Ms. Cole's storage unit and the theft of her property and that the Defendant lacked the potential for rehabilitation, the trial court's denial of probation is afforded a presumption of reasonableness, and we will affirm the trial court's decision absent an abuse of discretion.

The evidence in the record supports the trial court's denial of probation. In the presentence report, the Defendant admitted that he had used methamphetamine on a daily basis since the age of twenty-one until 2015, over twenty years. The Defendant also admitted that he had never participated in a mental health or substance abuse treatment program. Additionally, the Defendant admitted at the bench trial that he had used methamphetamine before breaking into Ms. Cole's storage unit and stealing her property and that he purchased more drugs with the money he received from the consignment store for Ms. Cole's property. Further, the presentence report shows that the Defendant had

previously fled from Mississippi to Louisiana and was arrested as a "fugitive from justice." The trial court did not abuse its discretion by denying probation to the Defendant and instead sentencing the Defendant to confinement and requesting that he be placed in a facility with a methamphetamine treatment program. The Defendant is not entitled to relief on this ground.

*Restitution*

Lastly, the Defendant argues that the trial court improperly found that Storage Town of America was a victim and ordered him to pay $5,000 in restitution to Storage Town of America, and he requests that this court reverse the award of restitution to Storage Town of America.[2] The State responds that the trial court properly found that Storage Town of America was a victim of the Defendant's burglary and theft of property and that this court should affirm the order of restitution as to Storage Town of America or remand for a new hearing on restitution.

The Tennessee Supreme Court has not yet addressed what impact, if any, Bise has on our review of restitution orders, but we have previously applied an abuse of discretion standard with a presumption of reasonableness. State v. David Allan Bahanon, No. M2012-02366-CCA-R3-CD, 2013 WL 5777254, at *5 (Tenn. Crim. App. Oct. 25, 2013). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)). On appeal, the appellant bears the burden of demonstrating that the sentence is improper. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

"Whenever a felon is convicted of stealing . . . property, the jury shall ascertain the value of the property, if not previously restored to the owner, and the court shall, thereupon, order the restitution of the property, and, in case this cannot be done, that the party aggrieved recover the value assessed against the prisoner, for which execution may issue as in other cases." Tenn. Code Ann. § 40-20-116(a) (2015). "The purpose of restitution is not only to compensate the victim but also to punish and rehabilitate the guilty." State v. Johnson, 968 S.W.2d 883, 885 (Tenn. Crim. App. 1997). There is no set formula for determining restitution. State v. Smith, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994). Instead, the trial court "must ascertain both the amount of the victim's loss and the amount which the defendant can reasonably be expected to pay." State v. Bottoms, 87 S.W.3d 95, 108 (Tenn. Crim. App. 2001). Our Code defines "victim" as "an

---

[2] The Defendant does not contest on appeal the trial court's order of restitution to Ms. Cole.

individual who suffers direct or threatened physical, emotional or financial harm as the result of the commission of a crime . . . ." Tenn. Code Ann. § 40-38-203(1) (2015).

We initially note that count one of the indictment in this case states that Storage Town of America is the victim of the Defendant's burglary. While the judgments reflect that the trial court ordered the Defendant to pay $5,000 in restitution to Storage Town of America, there is no proof in the record regarding any pecuniary loss sustained by Storage Town of America as a result of the Defendant's burglary. Barbara Burford, the administrative assistant for Storage Town of America, stated in the presentence report that the people who owned Storage Town of America also owned a separate corporation, "RBH, Inc., the insurance company for Storage Town of America." Ms. Burford further stated that "RBH [Inc.] paid [Ms. Cole] $5000.00 on behalf of Storage Town[]." Ms. Burford requested $5,000 in restitution to RBH, Inc., not Storage Town of America. Further, the presentence report lists "Gill Properties/Barbara Burford" as a victim in the "Restitution" section, not Storage Town of America or RBH, Inc.

This court has previously determined that an insurance company may not receive restitution for the amount it paid out to a crime victim that it insures.[3] See State v. Alford, 970 S.W.2d 944 (Tenn. 1988). Therefore, we reverse and vacate the trial court's order of restitution to Storage Town of America and remand for entry of a corrected judgment.

### III. Conclusion

For the aforementioned reasons, the judgments of the trial court are affirmed in part and reversed in part.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

---

[3] At the sentencing hearing, the trial court ordered the Defendant to pay $5,000 in restitution to Storage Town of America. After the prosecutor noted that RBH, Inc. paid $5,000 to Ms. Cole to cover her loss, not Storage Town of America, the trial court stated that it interpreted the information in the presentence report as meaning that Storage Town of America was "self-insured[.]"

- 14 -